OPINION
ANDERSON, Justice.
Respondent Christopher Thomas Wenthe was convicted of third-degree criminal sexual conduct, . Minn.Stat. § 609.344, subd. 1 (l )(i) (2014), for sexually penetrating A.F. — a member of the parish where Wenthe served as a priest — at a single meeting at which A.F. sought spiritual counsel. Appellant State of Minnesota seeks review of three issues: (1) whether the district court committed plain error affecting Wenthe’s substantial rights by failing to provide a specific-unanimity jury instruction; (2) whether the State was required to prove that Wenthe had knowledge that A.F. sought or received religious *297 or spiritual advice, aid, or comfort at a meeting that also involved sexual penetration; and (3) whether the district court abused its discretion by denying Wenthe’s motion to admit evidence of A.F.’s sexual history after it admitted the State’s evidence of A.F.’s sexual inexperience. The court of appeals concluded the district court erred with respect to all three issues and that the cumulative effect of the errors necessitates a new trial. We reverse.
The facts underlying Wenthe’s conviction are set forth in detail in State v. Wenthe (Wenthe II), 839 N.W.2d 83 (Minn.2013), and so we only briefly recount them here. Wenthe was a Roman Catholic priest at a parish in Saint Paul. In the summer of 2003, Wenthe met A.F., who had recently started to attend the church at which Wenthe was a priest. A.F. soon confided in Wenthe about her personal struggles, including suffering sexual abuse as a child and suffering from bulimia. Over the next few months, Wenthe and A.F. developed a mentorship and friendship, spent time together in social contexts, and confided in each other about personal matters. A.F. also asked Wenthe to serve as her “regular confessor” in October 2003 and Wenthe heard A.F.’s confession at least once in that capacity.
On November 12, 2003, Wenthe and A.F. celebrated Wenthe’s birthday at A.F.’s apartment. They talked for many hours about topics of religion and sexuality, and Wenthe testified that they also discussed past sexual experiences and sexual acts they would like to perform with each other.
The following evening, November 13, 2003, Wenthe and A.F. met at Wenthe’s quarters in the church rectory. A.F. testified that she had a difficult session with her lay therapist earlier in the day, and Wenthe invited her to “call him after” her session if she needed spiritual guidance. Wenthe testified that they had simply agreed to get together that night. Both testified that Wenthe sexually penetrated A.F. for the first time that evening. They met again the following day to discuss what had happened the previous night. A.F. could not remember what they discussed, but she testified that Wenthe sexually penetrated her again. Wenthe denied engaging in sexual conduct that day.
Thereafter, Wenthe and A.F. continued a sexual relationship for approximately 1 year. A.F. testified that she still considered Wenthe to be her priest and viewed the relationship as centered on faith and spirituality. Wenthe testified that the relationship transformed “very quickly” into one based on sexual desire rather than spiritual guidance. The last sexual encounter was in February 2005. Later that year, a friend of A.F. reported the sexual relationship between Wenthe and A.F. to the archdiocese, but A.F. did not report the conduct to the police until 2010, when she learned that Wenthe had been assigned as the parish priest in Delano.
In 2011 the State charged Wenthe with two counts of third-degree criminal sexual conduct under the clergy sexual conduct statute, alleging that Wenthe had sexually penetrated A.F. at a single meeting at which A.F. had sought and received spiritual counsel, Minn.Stat. § 609.344, subd. 1(Z )(i), and at ongoing meetings at which A.F. had sought and received spiritual counsel, id., subd. 1(Z )(ii). At trial, the State introduced evidence of sexual penetration during at least two meetings between Wenthe and A.F., either of which could satisfy the single-meeting statute. The district court instructed the jury that their verdict must be unanimous, but the court did not tell the jurors that they must unanimously agree on the meeting at which Wenthe violated the statute.
*298 The district court refused Wenthe’s proposed jury instruction that Wenthe must know that he was providing spiritual counsel at a meeting at which he sexually penetrated A.F. The district court also denied Wenthe’s pretrial motion to admit evidence of A.F.’s sexual history, stating the evidence was inadmissible under the rape-shield law. See Minn.Stat. § 609.347, subd. 3 (2014); Minn. R. Evid. 412. Although the State indicated it would limit sexual-history evidence to the sexual abuse suffered by A.F. as a child, at trial the State introduced evidence that A.F. was sexually inexperienced compared to Wenthe. During the trial Wenthe renewed his motion to admit evidence of AF.’s sexual history, which was again denied.
The jury acquitted Wenthe of the “ongoing basis” clergy sexual conduct count, but found him guilty of the “single meeting” count. The district court convicted Wenthe of that count and sentenced him to 57 months in prison, stayed execution of .the sentence subject to 12 months in the workhouse, and placed Wenthe on probation for 15 years.
The court of appeals reversed the conviction and remanded for a new trial, concluding that the clergy sexual conduct statute, as applied in this case, violated the Establishment Clause of the United States Constitution. State v. Wenthe (Wenthe I), 822 N.W.2d 822, 829-30 (Minn.App.2012). The State appealed and we reversed, holding that the clergy sexual conduct statute does not violate the Establishment Clause, either facially or as applied in this case. Wenthe II, 839 N.W.2d at 92, 95.
On remand to consider Wenthe’s remaining challenges, the court of appeals again reversed and ordered a new trial. State v. Wenthe (Wenthe III), 845 N.W.2d 222 (Minn.App.2014). First, the court concluded that the district court violated Wenthe’s right to a unanimous verdict by failing to instruct the jury that it must unanimously agree on the specific meeting at which Wenthe violated the single-meeting clergy sexual conduct statute. Id. at 228-31. Next, the court held that the jury instructions erroneously omitted a requirement that the State prove Wenthe’s knowledge with respect to the “spiritual counsel” element of the statute. Id. at 231-33. Finally, the court determined that the district court erred by denying Wenthe’s motion to admit evidence of A.F.’s sexual history after it allowed the State to introduce testimony indicating that A.F. was sexually inexperienced. Id. at 233-35. The court of appeals concluded that the cumulative effect of the trial errors deprived Wenthe of a fair trial. Id. at 235-36. We granted review of all three issues.
I.
First, the State asserts that the district court did not commit' plain error affecting Wenthe’s substantial rights by failing to provide a specific-unanimity jury instruction. The State added the single-meeting charge to the complaint the day trial began, alleging that Wenthe sexually penetrated A.F. in a single meeting at which A.F. sought spiritual counsel “[o]n or between the 1st day of November, 2003 and the 31st day of December, 2003.” The State introduced evidence of sexual penetration occurring in at least two specific meetings during that timeframe, on November 13 and November 14, 2003, and A.F. testified that she and Wenthe engaged in sexual conduct approximately every two weeks thereafter. The prosecution stated in closing argument that the jury could use any of these meetings to satisfy the single-meeting statute:
The state ... has talked about many meetings where [A.F.] talked about receiving religious advice and comfort *299 where there was sexual penetration, but, specifically, there’s definitely that very first one [on November 13, 2003], the day she came from that counseling appointment. The time period for this charge is November 1st of 2003 to December 31st of 2003. So if there were any meetings where sexual contact occurred during the course of providing religious aid, comfort and advice, the defendant is guilty.
After closing arguments, the district court instructed the jury: “In order for you to return a verdict, whether guilty or not guilty, each juror must agree with that verdict. In other words, it has to be unanimous.” The court of appeals concluded that the district court erred by failing to provide a specific-unanimity instruction. In other words, the district court would have been required to state not only that the jury must unanimously agree that Wenthe violated the clergy sexual conduct statute, but also that the jury must unanimously agree on a specific meeting at which the statute was violated.
Because Wenthe did not request a specific-unanimity instruction or object to the unanimity instruction given, we review for (1) error, (2) that is plain, and (3) that affects Wenthe’s substantial rights. State v. Griller, 583 N.W.2d 736, 740 (Minn.1998). If those three prongs are met, we consider whether the error must be addressed to ensure the “fairness, integrity, or public reputation of judicial proceedings.” State v. Crowsbreast, 629 N.W.2d 433, 437 (Minn.2001) (citing Johnson v. United States, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).
The State’s charging decisions and presentation of evidence are very troubling. The State delayed charging the single-meeting offense until the day of trial and then alleged multiple violations of the single-meeting offense, occurring over the course of 2 months, in a single count. The unanimity problems created by the State’s vague drafting of the complaint could have easily been avoided by charging a separate count for each alleged meeting, narrowing the timeframe for the single-meeting count, or electing a specific meeting upon which it would rely to satisfy the single-meeting statute. Accurate charging is especially important here because the single-meeting statute is violated when the clergy member sexually penetrates the complainant “during the course of a meeting in which the complainant sought or received religious or spiritual advice, aid, or comfort.” Minn.Stat. § 609.344, subd. l(i)(i) (emphasis added). The single-meeting count, as charged by the State, invited ambiguity as to whether the jury was required to identify “a meeting” as provided by the statute.
We need not decide, however, whether the district court erred by omitting a specific-unanimity instruction, because the alleged error did not affect Wenthe’s substantial rights. An error affects a defendant’s substantial rights “if the error was prejudicial and affected the outcome of the case.” Griller, 583 N.W.2d at 741. In other words, there must be a “ ‘reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury.’ ” Id. (quoting State v. Glidden, 455 N.W.2d 744, 747 (Minn.1990)). The defendant bears the “heavy burden” of proving prejudice. Id.
The court of appeals concluded that the lack of a specific-unanimity instruction affected Wenthe’s substantial rights because “[t]he jury heard contrasting testimony as to the circumstances surrounding the first and later sexual encounters, particularly respecting the facts as to whether or not the complainant sought or received spiritual advice.” Wenthe III, 845 N.W.2d at *300 231. The court of appeals’ analysis, however, is incomplete. Because the jury determined that Wenthe violated the single-meeting clergy sexual conduct statute, it must have found that at least one specific meeting involved both sexual penetration and spiritual counsel. The parties do not dispute that A.F. sought and received spiritual counsel from Wenthe in the months leading up to the first sexual encounter. The record also establishes only two specific meetings at which sexual penetration may have occurred: Wenthe and A.F. both testified that sexual penetration occurred at the November 13 meeting; A.F. testified that penetration also occurred on November 14; and both testified that sexual conduct continued to occur on later, unidentified dates that may or may not have been during the relevant timeframe. Therefore, the unanimity instruction was prejudicial only if it is reasonably likely that (i) some jurors believed that both sexual penetration and spiritual counsel occurred at the November 13 meeting, but not at subsequent meetings; while (ii) other jurors believed that sexual penetration and spiritual counsel occurred at a later meeting but not at the November 13 meeting. See Scarborough v. United States, 522 A.2d 869, 873-74 (D.C.1987) (concluding that the lack of a specific-unanimity instruction was harmless error).
Jurors could have reasonably concluded that Wenthe violated the single-meeting statute at the November 13 meeting but not at later meetings. Wenthe and A.F. agree that sexual penetration occurred at the November 13 meeting. Additionally, Wenthe claimed that his relationship with A.F. “changed very quickly” into one based on friendship and later sexual desire, suggesting that spiritual couhsel was more likely to have been sought or received at the first meeting involving penetration rather than at a later one. Wenthe was acquitted of the ongoing-basis count, so the jury might have found this defense to be credible. The jury therefore could conclude that spiritual counsel and sexual penetration occurred at the first meeting but that the relationship changed afterwards.
There is no reasonable possibility, however, that some jurors concluded that both sexual penetration and spiritual counsel occurred at a later meeting but not at the November 13 meeting. This conclusion requires an assumption that A.F. did not receive spiritual counsel at the November 13 meeting, but then did receive spiritual counsel during a later meeting at which sexual penetration also occurred. A.F.’s testimony does not support this scenario. She provided detailed information regarding the spiritual counsel that she sought or received at the November 13 meeting, but she could not remember what was discussed at the November 14 meeting, and she made only general allegations of spiritual counsel at later meetings. Indeed, the State asserted in closing argument that “definitely that very first [meeting]” involved both sexual penetration and spiritual counsel; no other specific meetings were highlighted. Neither does the scenario comport with Wenthe’s theory of the case, as he argued that spiritual counsel ceased before the relationship became sexual in nature. Further, Wenthe and A.F. undisputedly engaged in sexual conduct at the November 13 meeting, but the record is unclear on other dates. Wenthe asserted that no sexual conduct occurred at the second meeting on November 14, and neither Wenthe nor A.F. could remember the exact dates of later sexual encounters. Thus, although the State invited the jury to convict Wenthe “if there were any meetings where sexual contact occurred during the course of providing religious aid, comfort, and advice” (emphasis added), it is not reasonably likely that any *301 juror relied on a later meeting but not the November 13 meeting to find Wenthe guilty.
The dissent argues that some jurors could have concluded that Wenthe provided religious or spiritual advice, aid, or comfort on November 14 but not on November 13. The record does not support this assertion. A.F. testified that on November 13, Wenthe invited her to his quarters “as an offering of consolation for the day,” and that A.F. “was relieved and excited to see ... the one person that [she] knew would understand why [her] day had been so difficult.” In comparison, the record reveals almost nothing about the November 14 meeting, particularly regarding what A.F. and Wenthe discussed that day. Moreover, A.F. did not identify specific meetings after November 13 when testifying about the spiritual counsel she received from Wenthe. She testified that she and Wenthe fell into “[a] pattern of sexual behavior that was always prompted by an offering of consolation or checking in to see how [she was] doing.” She also stated that “[t]he religious piece was the entire context of [their] relationship,” . that Wenthe “would offer to pray for [her] or express that he would be praying for [her],” and that she “was always seeking spiritual comfort, even in the midst of what became a horrible cycle.” Based on this record, it is unlikely that jurors would have distinguished between the spiritual counsel A.F. sought or received at the November 13 and November 14 meetings. If they did, it is not reasonably likely that the November 14 meeting involved spiritual counsel while the November 13 meeting did not.
Because it is not reasonably likely that the district court’s failure to provide a specific-unanimity jury instruction significantly affected the.verdict, we conclude that any error did not affect Wenthe’s substantial rights.
II.
Next, the State argues that the court of appeals erred when it concluded that the district court abused its discretion by omitting a knowledge requirement from the clergy sexual conduct statute. The court refused to give Wenthe’s proffered jury instruction, which included a requirement that the clergy member must have subjective knowledge of the purpose of the meeting at which sexual penetration occurred.[1] Instead, in its instructions to the jury, the court attached a knowledge requirement to only one element in the clergy sexual conduct statute: the intent to sexually penetrate. The court of appeals concluded that the district court’s instruction misstated the law because the clergy sexual conduct statute requires “proof of a particularized knowledge” that the complainant sought spiritual counsel. Wenthe III, 845 N.W.2d at 232-33.[2] We disagree.
*302 Denial of a requested jury instruction is reviewed for abuse of discretion. State v. Ndikum, 815 N.W.2d 816, 818 (Minn.2012). “Jury instructions are viewed as a whole to determine whether they fairly and adequately explain the law.” State v. Moore, 699 N.W.2d 733, 736 (Minn.2005). If review of the instruction requires statutory interpretation, we review the meaning of the statute de novo. See Ndikum, 815 N.W.2d at 818.
“Mens rea is the element of a crime that requires ‘the defendant know the facts that make his conduct illegal.’ ” Id. (quoting Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). Generally, criminal sexual conduct offenses require only an intent to sexually penetrate, unless additional mens rea requirements are expressly provided. See State v. Bookwalter, 541 N.W.2d 290, 296 (Minn.1995) (citing State v. Lindahl, 309 N.W.2d 763, 766-67 (Minn.1981)). But this does not end our analysis. See In re Welfare of C.R.M., 611 N.W.2d 802, 808 (Minn.2000) (noting the “long established principle of American criminal jurisprudence” that mens rea is required for common-law and felony crimes).
We are particularly hesitant to dispense with mens rea when doing so would result in a strict liability offense. Id. at 805. In C.R.M., we concluded that a person who carries a knife on school property is not guilty of felony possession of a dangerous weapon on school property unless he knows he possesses the knife. Id. at 810. We noted that although on its face the statute contained no mens rea requirement, “the legislature never explicitly indicated that it intended to create a strict liability offense.” Id. at 808; see also Staples, 511 U.S. at 620, 114 S.Ct. 1793 (“[I]f Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, ... it would have spoken more clearly to that effect.”). We came to a similar conclusion in State v. Ndikum, 815 N.W.2d at 822 (requiring the State to prove that the defendant knew he possessed a pistol to be guilty of the crime of possession of a pistol in public), and State v. Al-Naseer, 734 N.W.2d 679, 685-86 (Minn.2007) (concluding that for purposes of criminal vehicular homicide for leaving the scene, a defendant must know he was in an accident with a person or vehicle because “failure to stop is not a crime in all circumstances”). The statutes at issue in C.R.M., Ndikum, and Al-Naseer would have imposed strict liability but for the implied knowledge requirement.
By contrast, we have generally declined to imply mens rea when the statute does not otherwise result in strict liability. In State v. Benniefield, 678 N.W.2d 42, 44 (Minn.2004), we concluded that the crime of possession of a controlled substance in a school zone does not require the State to prove the defendant knew he was in a school zone. The offense does not impose strict liability because the state must prove knowledge of drug possession, see State v. Florine, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975), and we declined to add an additional mens rea requirement for knowledge of the location where the possession occurred. Benniefield, 678 N.W.2d at 49. We recently reaffirmed this holding in State v. Garcia-Gutierrez, 844 N.W.2d 519, 523-25 (Minn.2014), concluding that the crime of burglary with a dangerous weapon is not a strict liability offense and does not require knowledge of gun possession because the underlying offense — burglary—already carries a mens rea requirement.
*303 With this in mind, we turn to the language of the clergy sexual conduct statute:
A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if any of the following circumstances exists:
[[Image here]]
(Z) the actor is or purports to be a member of the clergy, the complainant is not married to the actor, and:
(i) the sexual penetration occurred during the course of a meeting in which the complainant sought or received religious or spiritual advice, aid, or comfort from the actor in private; or
(ii) the sexual penetration occurred during a period of time in which the complainant was meeting on an ongoing basis with the actor to seek or receive religious or spiritual advice, aid, or comfort in private. Consent by the complainant is not a defense....
Minn.Stat. § 609.344, subd. 1(Z) (2014). On its face, the “spiritual counsel” element of the clergy sexual conduct statute carries no knowledge requirement. Moreover, the structure of the statute does not suggest a mens rea requirement for the “spiritual counsel” element. See Morton Bldgs., Inc. v. Comm’r of Revenue, 488 N.W.2d 254, 259 (Minn.1992) (considering a statute’s structure as part of statutory interpretation). Minnesota Statutes § 609.344, subd. 1 (2014), provides that “[a] person who engages in sexual penetration ... is guilty ... if any of the following circumstances exist” (emphasis added), and then provides the necessary circumstances, which include a meeting involving spiritual counsel. As in Garcia-Gutierrez, this structure suggests that mens rea attaches to the act described in the primary clause (“sexual penetration”) and not to the “attendant circumstances” described later in the statute. See Garciar-Gutierrez, 844 N.W.2d at 523 (concluding that mens rea applied to the primary clause in the definition of first-degree burglary, Minn.Stat. § 609.582, subd. 1 (2014), and not to the additional “circumstances” described in the secondary clause, subdivision 1(b), where the secondary clause was silent as to mens rea).
Furthermore, the clergy sexual conduct statute is not a strict liability offense because we have stated that sexual penetration must be intentional. Bookwalter, 541 N.W.2d at 296; see State v. Evans, 756 N.W.2d 854, 875 (Minn.2008) (concluding that first-degree peace-officer murder is not a strict liability offense because “ ‘[l]ack of knowledge of a peace officer’s identity does not change the fact that intent to kill must be shown’ ” (quoting State v. Angulo, 471 N.W.2d 570, 573 (Minn.App.1991))). Wenthe argues that an additional mens rea element is required because sexual penetration is not inherently criminal. But the clergy sexual conduct statute is similar to the statute at issue in Ndikum. In that case, we considered whether, and what type, of mens rea is required to commit the crime of possession of a pistol in public, Minn.Stat. § 624.714, subd. la (2014). We concluded that the statute merely requires knowledge of possession of a pistol, which also is not inherently criminal conduct. Ndikum, 815 N.W.2d at 821. We did not require knowledge of location in that case, even though possession of a pistol without a permit is a crime only in a public place.
In Benniefield and Garciar-Gutierrez, by contrast, the defendants sought a mens rea requirement for the circumstances that enhanced the crime. We concluded that because a mens rea requirement already existed for the underlying offenses — drug possession and burglary — the additional circumstances did not warrant an additional knowledge requirement. Based on *304 these eases, including Ndikum, the mere fact that sexual penetration is not inherently criminal does not necessitate an additional knowledge requirement for the circumstances attendant to the penetration.
The court of appeals concluded that a mens rea requirement for the “spiritual counsel” element would harmonize the clergy sexual conduct statute with other criminal sexual conduct offenses. Wenthe III, 845 N.W.2d at 232. The court asserted that because several criminal sexual conduct offenses include an additional mens rea element, the clergy sexual conduct statute should be construed in the same way. Id.; see Minn.Stat. § 609.341, subd. 11(a) (2014) (stating that offenses involving “sexual contact” must be “committed with sexual or aggressive intent”); Minn.Stat. § 609.344, subd. 1(d) (criminalizing sexual penetration when “the actor knows or has reason to know that the complainant is mentally impaired, mentally incapacitated, or physically helpless”). But these statutes merely demonstrate that the Legislature knows how to add an explicit mens rea requirement. In fact, these provisions caution us against adding an implicit requirement in others, because the Legislature could, and has, included a mens rea term when one was intended. See Evans, 756 N.W.2d at 875-76 (declining to interpret Minnesota’s peace-officer murder statute to require knowledge that the victim was an officer because the statute “is worded differently than statutes in many other jurisdictions” that include an explicit knowledge requirement).
The court of appeals also concluded that a knowledge requirement would harmonize the clergy sexual conduct statute with “other provisions in section 609.344, which do not presume a vulnerable victim but require proof of the preexistence of a mental or emotional condition or that the actor uses deceptive conduct.” Wenthe III, 845 N.W.2d at 233 (citing State v. Bussmann, 741 N.W.2d 79, 88 (Minn.2007) (Hanson, J.) (plurality opinion)). For example, the psychotherapist sexual conduct statute requires an “ongoing psychotherapist-patient relationship,” Minn.Stat. § 609.344, subd. 1(h)(ii), an “emotional dependence] upon the psychotherapist,” id., subd. l(i), or “therapeutic deception,” id., subd. l(j). See also Wenthe III, 845 N.W.2d at 233 (noting that the clergy evidentiary privilege statute, Minn.Stat. § 595.02, subd. 1(c) (2014), prohibits a member of the clergy from testifying about a confession made to the clergy member in his or her “professional character”). However, “courts cannot supply that which the legislature purposely omits or inadvertently overlooks.” Wallace v. Comm’r of Taxation, 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971). The scope of the psychotherapist-sexual-conduct and clergy-privilege statutes is expressly limited by language that is absent in the clergy sexual conduct statute. It is inappropriate to assume that the Legislature intended the scope of the clergy sexual conduct statute to be coextensive with other statutes that contain different language. Further, the court of appeals overlooks other criminal sexual conduct statutes that, like the clergy sexual conduct statute, “presume a vulnerable victim.” See, e.g., Minn. Stat. § 609.344, subd. l(a)-(b), (d) (statutory rape); id., subd. l(m) (employee of secure treatment or correctional facility).
The dissent notes that a clergy member engaging in a nonmarital sexual relationship may lack notice of the potential criminality of his or her actions. We agree that notice may be lacking if, for example, the complainant does not frequent the clergy member’s place of worship, the complainant lies about the purpose of their meetings, or the communication between complainant and clergy member is limited to a *305 vague theological discussion without something more. But this is not that case: regardless of Wenthe’s subjective belief at the time of the sexual encounters, he certainly had notice that his actions were potentially criminal. Further, even without an additional knowledge requirement, clergy members are protected from inadvertent violations of the statute because the State must still prove that the complainant actually sought or received spiritual counsel. Here, the evidence indicating that A.F. sought spiritual counsel is more than sufficient, as A.F. worshipped at Wenthe’s church and met him at a church event, Wenthe had served as AF.’s regular confessor in the past, at least initially their relationship and discussions centered around religion and spirituality, and the initial penetration occurred on church property. To the extent the dissent believes that the language of the statute is insufficiently vague as currently drafted to provide notice, that problem is properly solved by the Legislature rather than by implying an additional mens rea requirement.
We conclude that the clergy sexual conduct statute does not require the clergy member to know that the complainant seeks or is receiving spiritual counsel. The district court therefore did not err by refusing to give Wenthe’s proposed jury instruction.
III.
Finally, the State challenges the court of appeals’ conclusion that the district court violated Wenthe’s due process right to present a complete defense. Before trial, the district court denied Wenthe’s motion to admit evidence regarding AF.’s sexual history based on the rape-shield law. See Minn.Stat. § 609.347, subd. 3 (2014); Minn. R. Evid. 412. The State indicated it would introduce only relevant sexual-history evidence related to AF.’s sexual abuse as a child. During AF.’s direct examination, however, the district .court allowed the prosecutor to elicit the following testimony:
Q. In addition to you performing oral sex or fellatio on him, and the anal sex, was there any other kind of penetration? In that sense I mean did he — did he ever perform oral sex on you?
A. Yes, eventually, again, not initially, but eventually he did. I — I’d never done anything like that before, and I trusted him..
[[Image here]]
Q. Apart from being raped as a child, were you a virgin at that time?
A. Yes.
Q. Did the defendant try to convince you to have intercourse with him?
A. No.
Q. Did you let him know that you didn’t want to have intercourse?
A. Yes.
[[Image here]]
Q. Was there any discussion at all about why — having anal sex as opposed to vaginal sex?
A. I think — I don’t — I don’t recall. I don’t recall that. I just — I mean anal sex — you know, you wouldn’t • get pregnant. And, I mean, that was a fear of his, of course. And it was important to me in some strange way to protect my virginity.
During closing argument, the prosecutor also described A.F. as “naive, vulnerable, [and] inexperienced.”
After AF.’s direct testimony, Wenthe’s counsel made the following offer of proof:
[F]or the record, had I been allowed to do so, I would have asked [Wenthe] what conversation he did have with
*306 [A.F.] on the evening of November 12, which was the long five-hour conversation that they had. He would have testified that she told him that with past boyfriends that she enjoyed oral sex, that anal sex was something that she had experienced, that given her experience and her past that she would enjoy doing the same with him, and that conversation that she had with him formulated his intentions the next day and his intentions as the relationship progressed.
The district court did not amend its earlier ruling.
Evidentiary rulings are reviewed for an abuse of discretion, even when a constitutional violation is alleged. State v. Profit, 591 N.W.2d 451, 463 (Minn.1999); see State v. Richards, 495 N.W.2d 187, 195 (Minn.1992) (“[T]he accused ‘must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.’ ” (quoting Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973))). A violation of a criminal defendant’s constitutional rights necessitates a new trial unless the violation was harmless beyond a reasonable doubt. State v. Jones, 556 N.W.2d 903, 910 (Minn.1996).
In a prosecution for criminal sexual conduct, “evidence of the victim’s previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury,” unless one of the enumerated exceptions applies and “the probative value of the evidence is not substantially outweighed by its inflammatory or prejudicial nature.” Minn.Stat. § 609.347, subd. 3; Minn. R. Evid. 412; see State v. Friend, 493 N.W.2d 540, 545 (Minn.1992) (noting that the rape-shield law limits admission of. evidence of the complainant’s prior sexual conduct). The rape-shield law “serves to emphasize the general irrelevance of a victim’s sexual history, not to remove relevant evidence from the jury’s consideration.” State v. Crims, 540 N.W.2d 860, 867 (Minn.App.1995) (citing State v. Elijah, 206 Minn. 619, 621, 626, 289 N.W. 575, 577, 579 (1940)), rev. denied (Minn. Jan. 23, 1996). We have construed the rape-shield law as allowing sexual-history evidence, however, when “admission is constitutionally required by the defendant’s right to due process, his right to confront his accusers, or his right to offer evidence in his own defense.” State v. Benedict, 397 N.W.2d 337, 341 (Minn.1986) (citing State v. Caswell, 320 N.W.2d 417, 419 (Minn.1982)).
The court of appeals concluded that the State’s evidence of A.F.’s sexual inexperience “opened the door” to Wenthe’s rebuttal evidence of her past sexual conduct, and the district court’s refusal to admit this evidence was an abuse of discretion. Wenthe III, 845 N.W.2d at 234-35. “ ‘Opening the door’ occurs when ‘one party by introducing certain material ... creates in the opponent a right to respond with material that would otherwise have been inadmissible.’ ” State v. Valtierra, 718 N.W.2d 425, 436 (Minn.2006) (alteration in original) (quoting 8 Henry W. McCarr & Jack S. Nordby, Minnesota Practice-Criminal Law and Procedure § 32.90, at 691 (4th ed.2012)). This doctrine is “ ‘essentially one of fairness and common sense,’ ” and prevents one party from gaining an unfair advantage. Id. (quoting 8 McCarr & Nordby, supra, § 32.90, at 691-92).
The State should not have introduced evidence indicating that A.F. was sexually inexperienced and abstained from vaginal intercourse to “protect [her] virginity,” and the district court abused its discretion by allowing it to do so. The *307 rape-shield law applies equally to evidence offered by the prosecution and the defense. Minn.Stat. § 609.347, subd. 3 (“[EJvidence of the victim’s previous sexual conduct shall not be admitted....”); see, e.g., State v. Calbero, 71 Haw. 115, 785 P.2d 157, 161-62 (1989); People v. Sandoval, 135 Ill.2d 159, 142 Ill.Dec. 135, 552 N.E.2d 726, 730-31 (1990); State v. Gavigan, 111 Wis.2d 150, 330 N.W.2d 571, 576 (1983). It also applies to “negative” evidence — i.e., an assertion that the complainant does not have prior sexual experience. See Gavigan, 330 N.W.2d at 576 (“Nothing in the [Wisconsin rape-shield] statute limits its applicability to prior affirmative acts. Rather, the plain meaning of the words ‘prior sexual conduct’ includes the lack of sexual activity as well.”). The State’s irrelevant characterization of A.F.’s sexual history is particularly troubling because of the prosecution’s commitment in pretrial discussions to limit sexual-history evidence to A.F.’s sexual abuse as a child. The State offers no explanation for its about-face and, also inexplicably, the district court was silent in response to the State’s decision to abandon its commitment to the court.
But the conduct of the State here, and the failure of the district court to respond, does not establish that the court abused its discretion by declining to admit Wenthe’s proffered evidence. The limited relevance and probative value of that evidence does not substantially outweigh its prejudicial and harmful effect. See Minn. R. Evid. 403, 412. Wenthe argues that the evidence demonstrates that A.F. was more likely to view the relationship as based on sexual desire rather than religious mentor-ship. But the evidence at issue merely shows that A.F. had previous sexual partners. It provides little insight into her specific relationship with Wenthe, and offers few clues as to whether she was less likely to have sought spiritual advice while engaging in sexual conduct with him. There is no indication, for example, that the proffered evidence demonstrates that A.F. had prior sexual experiences with other clergy members or counselors. If anything, the evidence is merely probative on the question of whether A.F. consented to the sexual penetration, which is irrelevant here because “[cjonsent by the complainant is not a defense” to clergy sexual conduct. Minn.Stat. § 609.344, subd. 1(1).
The court of appeals asserted that Wenthe’s proffered sexual-history evidence would have provided a “source of sexual knowledge independent of [A.F.’s] experiences” with Wenthe. Wenthe III, 845 N.W.2d at 235. But a complainant’s source of knowledge ordinarily becomes relevant only when the defendant asserts that the complainant fabricated the sexual conduct. See Harriett R. Galvin, Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade, 70 Minn. L. Rev. 763, 865-67 (1986). There, sexual-history evidence “establish[es] a source of knowledge or familiarity with sexual matters in circumstances in which lack of knowledge is the likely inference to be drawn by the fact finder.” Id. at 866; see, e.g., State v. Kroshus, 447 N.W.2d 203, 205 (Minn.App.1989) (developmentally disabled complainant), rev. denied (Minn. Dec. 20, 1989); Summitt v. State, 101 Nev. 159, 697 P.2d 1374, 1377 (1985) (6-year-old complainant); State v. Howard, 121 N.H. 53, 426 A.2d 457, 462 (1981) (12-year-old complainant). Here, Wenthe conceded that sexual penetration occurred, so source-of-knowledge evidence is unnecessary. Moreover, A.F.’s general source of knowledge of sexual matters is largely irrelevant to the primary disputed question of whether she sought or received spiritual counsel.
But even assuming the district court abused its discretion in disallowing *308 Wenthe’s sexual-history evidence, any error was harmless beyond a reasonable doubt. Constitutional error does not result in a reversal of a conviction “if the verdict actually rendered was surely unattributable to the error.” Jones, 556 N.W.2d at 910 (citing Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). Although the State elicited testimony from A.F. that she was sexually inexperienced and made a statement to that effect during closing argument, A.F. also significantly undercut the State’s suggestion that she was “inexperienced” when - she testified about her tendency to “dissociate” during previous sexual experiences with other partners. Moreover, Wenthe testified that he and A.F. had discussed “the type of sexual behavior that might interest one another” and “past sexual practices that [they] had respectively engaged in,” and Wenthe’s counsel vigorously cross-examined A.F. regarding Wenthe and A.F.’s conversations about sexual matters.
Most importantly, Wenthe was allowed to — and did — testify at length about his perception of his relationship with A.F. He believed that their relationship “changed very quickly” into one based on sexual desire rather than spiritual guidance. The jury evidently rejected Wenthe’s version of the facts, and Wenthe provides no reason to conclude that the verdict would have been different if the jury knew more about AF.’s past sexual experiences. Based on this record, the verdict was surely unattributable to the error, if any. We therefore conclude that the district court’s decision to deny Wenthe’s motion to admit evidence of A.F.’s sexual history was not an abuse of discretion and was harmless beyond a reasonable doubt.
Because we conclude that the challenged decisions of the district court were either not error, did not affect Wenthe’s substantial rights, or were harmless beyond a reasonable doubt, we reverse the court of appeals and reinstate Wenthe’s conviction.
Reversed.
DIETZEN, J., took no part in the consideration or decision of this case.
WRIGHT, J., took no part in the consideration or decision of this case.

. The State contends that this issue should receive plain-error review rather than harmless-error review, because Wenthe’s argument on appeal was not "embodied in his objection at trial.” See State v. Kuhnau, 622 N.W.2d 552, 555 (Minn.2001). Because we conclude that the district court did not err, we need not determine which standard of review applies.

. The court of appeals construed this issue as whether the clergy sexual conduct statute requires general or specific intent. See Wenthe III, 845 N.W.2d at 232. A general-intent crime requires only that the defendant “intentionally engag[ed] in the prohibited conduct,” whereas a specific-intent crime “requires an 'intent to cause a particular result.’ ” State v. Fleck, 810 N.W.2d 303, 308 (Minn.2012) (quoting 9 Henry W. McCarr & Jack S. Nord-by, Minnesota Practice-Criminal Law and Procedure § 44:3, at 515 (4th ed.2012)). Because the clergy sexual conduct statute does not require the clergy member to intend a particular result, the statute is a general-intent crime regardless of whether the clergy mem *302 ber must have knowledge that the complainant sought or received spiritual counsel.