*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0744**

State of Minnesota,
Respondent,

vs.

Raymont Michael Redmond,
Appellant.

**Filed May 13, 2024**
**Affirmed**
**Cochran, Judge**

Hennepin County District Court
File No. 27-CR-22-4504

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

In this appeal from the final judgment of conviction for two counts of first-degree criminal sexual conduct, appellant argues that the district court erred by allowing the state to introduce evidence of the victim's out-of-court statements and by failing to give a specific unanimity instruction to the jury. Appellant also argues in a pro se supplemental brief that the jury was "tainted" by two evidentiary issues. Because we discern no plain error by the district court and because appellant's pro se argument does not warrant relief, we affirm.

**FACTS**

In February 2022, P.J. disclosed to her mother that appellant Raymont Michael Redmond had been sexually abusing her. Redmond is P.J.'s stepfather. P.J. was 14 years old when she told her mother about the abuse.

After the disclosure, P.J.'s mother contacted the police, and a peace officer responded to Redmond's home. P.J. told the officer that Redmond had been coming into her room at night since approximately 2019. At first, Redmond asked her to pull down her pants. Then, in 2021, Redmond started forcing P.J. to take off her pants so that he could penetrate her vagina with his penis. P.J. reported to the officer that Redmond penetrated her vagina on three separate occasions and that the last time was in November 2021. In the weeks following her statement to the officer, P.J. gave statements about Redmond's abuse to a forensic interviewer and to a pediatric nurse practitioner.

2

In March 2022, respondent State of Minnesota charged Redmond with two counts of first-degree criminal sexual conduct in violation of Minnesota Statutes sections 609.342, subdivision 1a(g) (Supp. 2021), and 609.342, subdivision 1(g) (2020). The first count alleged that Redmond "engaged in sexual penetration and/or sexual contact" with a child under the age of 16 between September 15, 2021, and December 31, 2021. The second count alleged the same type of conduct between May 1, 2021, and September 14, 2021. The case proceeded to a jury trial in January 2023.

At trial, P.J. testified about Redmond's visits to her room and the various occasions when Redmond pressured her into sexual acts. P.J. stated that the first time Redmond came into her bedroom alone was when she was 13 years old and in the sixth grade. According to P.J.'s testimony, Redmond came into P.J.'s room at about 6:00 a.m. on a school day and asked her to touch him. Redmond then grabbed her arm and tried to move it so that she was touching his penis. P.J. moved away and, just then, her alarm clock sounded. Redmond instructed P.J. not to tell anyone about what had occurred and left the room.

P.J. testified that on subsequent occasions when Redmond visited her bedroom, he penetrated her vagina with his penis. P.J. testified that Redmond sexually penetrated her "[m]ore than once." On one occasion, Redmond entered P.J.'s room, asked her to touch him, pulled her pants down, and then began sexually penetrating her vagina. P.J. told Redmond that it hurt and tried to push him away. After Redmond "finally got off of [her]," he talked to P.J. for a short time and then left the room.

On another occasion when Redmond engaged in sexual penetration, the incident started with Redmond coming into P.J.'s bedroom and asking her to take naked pictures of

3

him.  P.J. told Redmond that she did not know where her phone was located because she did not want to take pictures of him.  During the encounter, Redmond told P.J. that "he didn't know that [P.J.] thought of him as a real dad."  Redmond then hugged P.J.  On cross-examination, P.J. confirmed that she told the forensic interviewer about this incident.  She also confirmed that this was "the most recent incident" of sexual penetration by Redmond, that it happened at night, that she "told him that it hurt," and that as soon as she "started making noises," he left.

P.J. testified that the penetration occurred in 2021.  When asked what time of year "the incidents" of penetration occurred, P.J. responded that "[i]t wasn't cold, so . . . maybe when summer was starting."

Finally, P.J. testified about an encounter outside the home, when she was in Redmond's car with him at a Family Dollar parking lot.  While they were talking, Redmond brought up the first incident, when he attempted to make her touch his penis.  Redmond then pulled out his penis and asked P.J. to touch it.  P.J. refused.  Redmond then asked P.J. to put her hands in her pants and "play with" herself.  P.J. testified that she complied to make "[t]he whole situation" go faster.

The police officer, forensic interviewer, and nurse to whom P.J. disclosed Redmond's abuse also testified at the trial.  The officer recounted P.J.'s statements during the officer's visit to Redmond's home in February 2022.  The forensic interviewer authenticated a recording of P.J.'s forensic interview from February 2022, which was played for the jury and admitted into evidence.  During the interview, P.J. described Redmond's escalating conduct over the previous three years, which progressed from

4

Redmond entering her room at night and asking her to touch his genitals to Redmond locking her door and vaginally penetrating her with his penis. P.J. also said that once, while she was in Redmond's car with him at a Family Dollar parking lot, Redmond showed her his penis and brought up the first time he visited P.J.'s bedroom at night. P.J. told the forensic interviewer that the last incident of penetration occurred when she was 14 years old and when "[i]t was probably just starting to get cold out." Lastly, the nurse testified about P.J.'s statements during a medical examination in March 2022. The nurse testified that P.J. thought that Redmond penetrated her "two or three times," with the most recent incident occurring in November 2021. Redmond did not object to the state's elicitation of P.J.'s statements via any of the three witnesses.

Redmond testified and denied P.J.'s allegations. Redmond also testified about his relationship with P.J.'s mother. He explained that the relationship grew "rocky" in 2021, and that P.J. had witnessed him physically abusing her mother. On cross-examination, Redmond testified that he believed that P.J. was fabricating the allegations of sexual abuse to protect her mother from Redmond's physical abuse.

After the parties' closing arguments, the district court instructed the jury that, in order to find Redmond guilty of the two counts of first-degree criminal sexual conduct, the jury must find that: (1) Redmond "engaged in sexual penetration with [P.J.]"; (2) P.J. was under the age of 16; (3) Redmond had a significant relationship with P.J.; and (4) Redmond's acts took place during the relevant time period, as identified in each count.

The jury returned guilty verdicts on both counts. The district court imposed concurrent, executed sentences of 172 months on each count.

Redmond appeals.

## DECISION

Redmond argues that the district court committed two errors. First, he asserts that the district court erroneously permitted the state to introduce evidence of P.J.'s out-of-court statements to the peace officer, forensic interviewer, and nurse as substantive evidence supporting count one. Second, he contends that the district court failed to provide a specific unanimity instruction regarding count two. Redmond also raises various arguments in a pro se supplemental brief. We address Redmond's arguments in turn.

## I. The district court did not commit plain error by allowing the state to introduce evidence of P.J.'s out-of-court statements.

Redmond first argues that the district court erred by permitting the state to introduce evidence of out-of-court statements that P.J. made to the peace officer, forensic interviewer, and nurse. Redmond did not object to the admission of this evidence at trial. Typically, "[a]ppellate review of an evidentiary issue is forfeited when a defendant fails to object to the admission of evidence." *State v. Vasquez*, 912 N.W.2d 642, 649 (Minn. 2018). But an appellate court may review forfeited issues for plain error. *Id.* at 650; *see also* Minn R. Crim. P. 31.02 ("Plain error affecting a substantial right can be considered . . . on appeal even if it was not brought to the [district] court's attention."). To establish plain error, a defendant must demonstrate that "(1) there was an error, (2) the error was plain, and (3) the error affected the defendant's substantial rights." *Vasquez*, 912 N.W.2d at 650 (quotation omitted). "If any prong of the test is not met, the claim fails." *State v. Jackson*, 714 N.W.2d 681, 690 (Minn. 2006). And even if a defendant satisfies the plain-error test,

6

we will "correct the error *only* when it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022).

Redmond asserts that the district court plainly erred by admitting evidence of P.J.'s out-of-court statements because the statements were inadmissible hearsay. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay is only admissible as provided by the rules of evidence or by other rules prescribed by the supreme court or legislature. Minn. R. Evid. 802. But some out-of-court statements are *not* hearsay, including certain prior consistent statements by a witness who testifies at trial. Minn. R. Evid. 801(d)(1)(B).

Because Redmond did not object at trial to testimony regarding P.J.'s out-of-court statements, the district court did not expressly address the admissibility of the evidence. On appeal, Redmond assumes that the statements were admitted as prior consistent statements under Minnesota Rule of Evidence 801(d)(1)(B). Under the prior-consistent-statements exemption, a statement is not hearsay if (1) the declarant testifies at trial, (2) the declarant "is subject to cross-examination concerning the statement," (3) the statement is "consistent with the declarant's testimony," and (4) the statement is "helpful to the trier of fact in evaluating the declarant's credibility as a witness." Minn. R. Evid. 801(d)(1). Redmond only disputes the third prong—whether P.J.'s out-of-court statements were consistent with her testimony.

7

For trial testimony and a prior statement to be consistent, they "need not be identical." *State v. Zulu*, 706 N.W.2d 919, 924-25 (Minn. App. 2005); *see also State v. Bakken*, 604 N.W.2d 106, 109 (Minn. App. 2000), *rev. denied* (Minn. Feb. 24, 2000) ("The trial testimony and the prior statement need not be verbatim."). Thus, admission of a statement "that is reasonably consistent with the trial testimony is not reversible error." *Zulu*, 706 N.W.2d at 924 (quotation omitted) (determining that criminal-sexual-conduct victim's prior statements were reasonably consistent with her trial testimony and that any inconsistencies were not substantial).

Redmond argues that P.J.'s out-of-court statements to the peace officer, forensic interviewer, and nurse are not consistent with P.J.'s trial testimony. Redmond asserts that P.J.'s out-of-court statements indicated that Redmond last penetrated P.J. in November 2021, but P.J. did not explicitly testify at trial as to when the last act of penetration occurred. Redmond contends that, without P.J.'s out-of-court statements, there is no evidence supporting his conviction under count one, which required the jury to find that Redmond penetrated P.J. between September 15, 2021, and December 31, 2021.

Our review of the record shows that P.J.'s out-of-court statements to the forensic interviewer, peace officer, and nurse regarding the acts of penetration are reasonably consistent with her trial testimony and therefore were not erroneously admitted. At trial, P.J. testified that during one instance when Redmond was penetrating her, she tried to push him off and that it hurt. P.J. testified that after Redmond got off of her, he talked for a while and then left. Similarly, in her statement to the forensic interviewer, P.J. stated that, on the first occasion when Redmond penetrated her, she told him that it hurt, and that

Redmond did not stop until P.J. pushed him off. P.J. also told the interviewer that, after the penetration ended, Redmond talked to P.J. before eventually leaving.

P.J.'s trial testimony and her statement at the forensic interview are also reasonably consistent with regard to another incident of penetration. At trial, P.J. testified about an incident in which Redmond entered P.J.'s bedroom and asked her to take naked pictures of him. P.J. testified that she pretended to not know where her phone was so she would not have to take naked pictures. During that encounter, Redmond also told P.J. that he did not know that she saw him as her real dad and then started crying and hugged her. On cross-examination, P.J. testified that this incident had been the most recent incident of penetration. P.J. described the very same encounter to the forensic interviewer. In sum, P.J.'s trial testimony and forensic interview contain markedly similar details about the various incidences of penetration, and so we conclude that they are reasonably consistent.

P.J.'s trial testimony about the incidents of penetration is also reasonably consistent with the out-of-court statements that she made to the peace officer and the pediatric nurse practitioner. According to the peace officer's testimony about P.J.'s out-of-court statement, P.J. "tried pushing [Redmond] off of her" and then "after a while, she would . . . make noises, [and Redmond] would then get up and leave the bedroom." The nurse's testimony about P.J.'s statements contained fewer specific details. But the nurse did testify that P.J. said that Redmond penetrated her "two or three times" in 2021 and that the most recent time was in November 2021. At trial, P.J. testified that Redmond penetrated her "[m]ore than once" in 2021. We conclude that P.J.'s statements to the peace officer and the nurse are also "reasonably consistent" with her trial testimony.

9

Redmond is correct that P.J.'s out-of-court statements included detail about when the last act of penetration occurred and, at trial, P.J. did not expressly testify to when the last act occurred. But that additional detail in her out-of-court testimony does not make her trial testimony inconsistent with the out-of-court statements. *See id.* at 924-25 (holding that forensic interview was reasonably consistent with trial testimony and therefore admissible even when interview included "statements that were in the interview but not testified to at trial"). And P.J. did not testify in a manner inconsistent with these statements. In other words, she did not testify that the last act of penetration was not in November 2021.

In addition, P.J.'s testimony was substantially consistent with her prior statements regarding other incidents that did *not* involve penetration, such as the time Redmond first came into P.J.'s bedroom and the Family Dollar incident. Therefore, we conclude that P.J.'s out-of-court statements are "reasonably consistent" with P.J.'s trial testimony and the district court did not err when it admitted the testimony.[1]

Further, Redmond has not shown that the alleged error was plain as required under the applicable standard of review. "An error is plain if it is clear and obvious . . . ." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). In other words, the error "must have been so clear under applicable law at the time" of trial that "the defendant's failure to object—and thereby present the [district] court with an opportunity to avoid prejudice—

---

[1] The state also argues that P.J.'s out-of-court statements were admissible under the residual exception to the rule against hearsay pursuant to Minnesota Rule of Evidence 807. Because we conclude that P.J.'s statements were admissible as prior-consistent statements, we need not determine whether the statements were also admissible under rule 807.

should not forfeit his right to a remedy." *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006).

In *Manthey*, the supreme court addressed whether the admission of alleged hearsay amounted to plain error. *Id.* Because of the "complexity and subtlety of the operation of the hearsay rule and its exceptions," the supreme court observed that an objection to a hearsay statement is "particularly important" so that a full record of the statement's admissibility is generated. *Id.* The supreme court noted that, without an objection, "the state was not given the opportunity to establish that some or all of the statements were admissible under one of the numerous exceptions to the hearsay rule." *Id.* And so, the supreme court held that the statements at issue were not "clearly or obviously inadmissible hearsay" in light of the undeveloped record and declined to grant relief under the plain-error test. *Id.* at 504-05.

Like in *Manthey*, Redmond's failure to object to the admission of P.J.'s out-of-court statements deprived the state of an opportunity to develop a record on the admissibility of those statements. Given the lack of a record on the admissibility of the statements and for the reasons discussed above, we conclude that Redmond has not demonstrated that the statements at issue were "clearly or obviously inadmissible hearsay." *See id.* at 504. Therefore, Redmond has not demonstrated that the district court committed plain error. *See id.* at 504-05; *Matthews*, 779 N.W.2d at 549. Accordingly, we need not address the remaining parts of the plain-error test. *See Jackson*, 714 N.W.2d at 690.

11

**II.** **The district court did not commit plain error by failing to give the jury a unanimity instruction.**

Redmond next argues that the district court erred in its jury instructions regarding count two by failing to "require all twelve jurors to unanimously agree that the [s]tate proved a single act of sexual penetration." Redmond did not object to the jury instructions at trial. Accordingly, we review Redmond's argument under the plain-error test. *State v. Wenthe*, 865 N.W.2d 293, 299 (Minn. 2015). Again, to satisfy the plain-error test, Redmond must demonstrate (1) error, (2) that is plain, and (3) affects his substantial rights. *Id.* An error in jury instructions affects a defendant's substantial rights "if the error was prejudicial and affected the outcome of the case." *Id.* (quotation omitted).

A jury's verdict must be unanimous in all criminal cases. Minn. R. Crim. P. 26.01 subd. 1(5). "To achieve that end, a jury must unanimously find that the government has proved each element of the offense." *State v. Pendleton*, 725 N.W.2d 717, 730-31 (Minn. 2007) (quotation omitted). "[T]he jury must unanimously agree on which acts the defendant committed if each act itself constitutes an element of the crime," but the jury is not required to agree on "alternative means or ways in which the crime can be committed." *State v. Stempf*, 627 N.W.2d 352, 354-55 (Minn. App. 2001) (quotation omitted). However, "different factual courses of conduct or states of mind that are offered to prove an element of a crime must show equivalent blameworthiness or culpability." *State v. Dalbec*, 789 N.W.2d 508, 511 (Minn. App. 2010) (quotation omitted), *rev. denied* (Minn. Dec. 22, 2010).

Redmond relies heavily on *Stempf* to argue that the district court plainly erred by not giving a specific unanimity instruction. In that case, the state charged Stempf with one count of a controlled-substance crime for possession of methamphetamine. *Stempf*, 627 N.W.2d at 354. The state introduced evidence that police seized methamphetamine from Stempf's place of work, as well as methamphetamine found in a truck where Stempf rode as a passenger. *Id.* At trial, Stempf denied owning the methamphetamine found at his work. *Id.* He presented evidence that two other people, with whom he worked, had access to the location where the drugs were seized. *Id.* Stempf also denied owning the methamphetamine found in the truck, and he presented evidence suggesting that it could have belonged to the truck's owner. *Id.*

Stempf "requested an instruction requiring the jurors to evaluate the two acts separately and unanimously agree that the state had proven the same underlying criminal act beyond a reasonable doubt." *Id.* The district court declined Stempf's request. *Id.* During closing argument, the state told the jury "that it could convict if some jurors found appellant possessed the methamphetamine found in the truck while others found he possessed the methamphetamine found on the premises." *Id.* The jury found Stempf guilty of a single count of controlled-substance possession. *Id.*

We reversed and remanded, concluding that the district court abused its discretion by refusing to give Stempf's requested unanimity instruction. *Id.* at 359. We examined the elements of the charged offense, which included "unlawful possession." *Id.* at 357. Because the statute provided that the act of possession is an element of the crime, we held that the jury was required to unanimously agree "on one act of possession that has been

13

proven beyond a reasonable doubt." *Id.* We noted that "the state did not elect which act of possession it was relying on for conviction" and that "[s]ome jurors could have believed appellant possessed methamphetamine found on the [work] premises while other jurors could have believed appellant possessed the methamphetamine found in the truck." *Id.* at 358.

Since our decision in *Stempf*, caselaw on the question of a unanimous verdict has continued to develop. More recently, in *State v. Rucker*, we concluded that the district court was not required to provide an unanimity instruction in a case involving criminal sexual conduct. 752 N.W.2d 538, 554 (Minn. App. 2008), *rev. denied* (Minn. Sept. 23, 2008). In that case, the state charged Rucker with several counts of first- and second-degree criminal sexual conduct concerning dozens of acts of sexual penetration with two victims. *Id.* at 543-44. Rucker "consistently testified at his trial that he had no sexual contact with" the victims. *Id.* at 544. On appeal, Rucker argued that the jury should have been given a unanimity instruction "as to which specific act [Rucker] committed." *Id.* at 548. We disagreed and distinguished *Stempf*, observing that

> [T]he prosecution here did not emphasize certain incidents, distinguish as to the proof of some incidents compared to others, or encourage the jury to find certain incidents were more likely to have occurred than other incidents, and appellant did not present separate defenses for each incident of alleged sexual abuse; rather, he simply maintained throughout his trial that he never had sexual contact with either child-victim. The victims referred to a few specific dates in their testimony on which incidents of abuse occurred, but with respect to their testimony and the state's case as a whole, these recollections served as examples of appellant's conduct and not distinct allegations of sexual abuse.

14

*Id.* We concluded "that the district court did not err in not instructing the jury that it must unanimously agree on which specific incidents formed the basis of appellant's convictions." *Id.*

Similarly, here we discern no plain error by the district court in not providing an instruction requiring the jury to unanimously agree on one specific incident of sexual penetration to support its guilty verdict on the second count of criminal sexual conduct. The *Rucker* decision distinguishes *Stempf* and establishes that a district court does not err by omitting a specific unanimity instruction when the defendant denies all allegations of criminal sexual conduct without raising separate defenses for each alleged act, and the state does not emphasize particular acts. Here, the state presented evidence of distinct acts of penetration, but the state did not "encourage the jury to find certain incidents were more likely to have occurred than other incidents." *Id.* And Redmond did not raise separate defenses to the various allegations. Instead, like the defendant in *Rucker*, Redmond simply denied the allegations. In our view, these facts are more like *Rucker* than *Stempf.* We therefore conclude that Redmond has not shown that the district court erred, much less plainly erred, by not providing a specific unanimity instruction on the criminal sexual conduct charge in count two.[2]

---

[2] As discussed above, we conclude that Redmond has not satisfied the plain-error test regarding either alleged error—namely, the admission of P.J.'s out-of-court statements and the lack of the unanimity instruction. But, even if we had concluded that Redmond satisfied the plain-error test on either alleged error, we still would not reverse because neither alleged error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski*, 972 N.W.2d at 356.

**III. Redmond's pro se supplemental arguments are forfeited.**

In a pro se supplemental brief, Redmond argues that his convictions should be reversed because two evidentiary issues "tainted the jury." First, Redmond claims that camera footage would have shown "that no crime happened." Second, Redmond argues that the nurse "was not suppose[d] to say that the test could prove if something did or did not happen" but "she did anyway." Redmond does not include citations to the record or legal authority in support of his arguments.

"Claims in a . . . supplemental brief that are unsupported by either arguments or citation to legal authority are forfeited," and "will not [be] considered unless prejudicial error is obvious on mere inspection." *State v. Montano*, 956 N.W.2d 643, 650-51 (Minn. 2021) (quotation omitted); *see also Brooks v. State*, 897 N.W.2d 811, 818-19 (Minn. App. 2017) (declining to consider arguments "based on mere assertion and not supported by legal authority or argument"). On mere inspection, Redmond's supplemental arguments fail to demonstrate any obvious, prejudicial error. Therefore, we conclude that Redmond's supplemental claims are forfeited, and we decline to review them.

**Affirmed.**