*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1198**

State of Minnesota,
Respondent,

vs.

Robert Michael Heath,
Appellant.

**Filed June 20, 2016
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-14-36534

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Zenaida Chico, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

On appeal from his misdemeanor convictions of fifth-degree assault, disorderly conduct, and trespass, appellant argues that his assault and trespass convictions are not

supported by sufficient evidence and that the district court committed plain error in its instructions to the jury. We affirm.

## FACTS

In the early morning hours of November 30, 2014, appellant Robert Michael Heath and his friend L.K. entered a grocery store to purchase water, bringing Heath's unleashed service dog into the store with them. On-duty, uniformed security officer Diallo McKenzie approached Heath to discuss the dog. Heath said that the dog was a service dog and walked past McKenzie. McKenzie then spoke with a store manager, who instructed him to verify the dog's status as a service dog and inform Heath that the dog needed to be leashed.

McKenzie again approached Heath, who seemed annoyed but showed McKenzie a laminated card that identified the dog as a service dog. Heath and L.K. then became argumentative with McKenzie, and according to McKenzie's trial testimony, "it was just getting too crazy," so McKenzie told Heath that he was "86'd for the night." McKenzie testified that "86 you off" means that "[y]ou can't come back in the store and do business for the night" and that he "told [Heath] that." When Heath did not immediately leave the store, McKenzie told him, "'Take the dog and go outside. You are 86'd for the night.'" Heath then left the store with the dog, and McKenzie informed the store manager that he had "put [Heath] out" because "he was just being too . . . much at that time."

About three minutes later, Heath reentered the store without the dog, and McKenzie said to him, "'Look, man, I told you already you are 86'd. You can't be here. You got to go.'" Heath ignored McKenzie, and Heath and L.K. approached a cashier to pay for the water. McKenzie testified, "[T]hat's when it got crazy. . . . [T]hey started . . . a lot of jaw

2

jacking, . . . just being disrespectful, this and that and a bunch of F bombs and all this other type of stuff." When "it got to a point . . . where it was getting very loud and very disruptive," McKenzie told L.K., "'You got to go.' . . . 'You 86'd too. You're out of here.'" When L.K. did not leave the store, McKenzie "grabbed her arm" and started to walk her out of the store. Heath immediately "slammed down" on McKenzie's wrist, breaking his hold of L.K. Freed from McKenzie's grasp, L.K. "leaped" at McKenzie, and L.K. and McKenzie began "wrestling back and forth." McKenzie testified that he grabbed L.K. by her collar and "threw her over the conveyer belt," and L.K. called out to Heath for help. Heath then "jumped on [McKenzie's] back and started grabbing [him]." When McKenzie turned to push Heath off, L.K. started "coming up off the conveyer belt," and McKenzie put her in a "headlock." Heath then "coldcock[ed McKenzie] in the face," and McKenzie gave Heath "a couple body shots," got him to the ground, and handcuffed him. Both the store manager and L.K. called 911. A police officer arrived at the store; spoke with McKenzie, Heath, and L.K.; and cited Heath for fifth-degree assault.

Respondent State of Minnesota charged Heath with the following misdemeanors: fifth-degree assault (harm), disorderly conduct (brawling or fighting), disorderly conduct (offensive/abusive/noisy/obscene), and trespass (return without claim of right). The responding officer, McKenzie, the store manager, L.K., and Heath testified at a jury trial, and the jury heard recordings of the manager's and L.K.'s 911 calls. The jury found Heath guilty as charged, and the district court sentenced him to 60 days in the workhouse with 55 days stayed for one year.

This appeal follows.

3

**D E C I S I O N**

Heath first argues that his assault conviction is not supported by sufficient evidence because the state failed to prove beyond a reasonable doubt that his use of force was not justified as defense of others. Heath is correct that the state bears the ultimate burden of disproving self-defense. *See State v. Radke*, 821 N.W.2d 316, 324 (Minn. 2012) ("[I]t is the State that bears the ultimate burden of disproving self-defense."). Defense of others parallels self-defense. *State v. Richardson*, 670 N.W.2d 267, 278 (Minn. 2003). "To meet its burden, . . . the State need only disprove beyond a reasonable doubt at least one of the elements of self-defense." *Radke*, 821 N.W.2d at 324. Those elements are:

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014) (quotation omitted). We therefore consider whether the state presented sufficient evidence to disprove any element of Heath's claim of defense of others.

"When evaluating whether the evidence is sufficient, [appellate courts] carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015), *reh'g denied* (June 15, 2015), *cert. denied*, 136 S. Ct. 509 (2015). In so doing, "[appellate courts] view the evidence presented in the light most favorable to the

4

verdict, and assume that the fact-finder disbelieved any evidence that conflicted with the verdict." *Id.*

The evidence in this case, as summarized above, is sufficient to disprove beyond a reasonable doubt the existence of reasonable grounds for Heath's belief, if any, that L.K. was in imminent danger of bodily harm at the moment when Heath hit McKenzie's wrist. Because the state presented sufficient evidence to disprove this element of Heath's claim of defense of others, we conclude that sufficient evidence supports Heath's conviction of fifth-degree assault.

Heath next argues that his trespass conviction is not supported by sufficient evidence because the state failed to prove beyond a reasonable doubt that he lacked claim of right to reenter the grocery store. A person commits trespass who "intentionally . . . returns to the property of another . . . after being told to leave the property and not to return, if the actor is without claim of right to the property or consent of one with authority to consent." Minn. Stat. § 609.605, subd. 1(b) (2014). Evidence of the absence of claim of right is "evidence from which it is reasonable to infer that the defendant has no legal claim of right to be on the premises where the trespass is alleged to have occurred." *State v. Brechon*, 352 N.W.2d 745, 750 (Minn. 1984). That evidence "normally would be in the realm of property law, such as that the title or right of possession is in a third party and that no title or permission has been given to defendant, *or if given has been withdrawn*." *Id.* (emphasis added). "If the state presents evidence that defendant has no claim of right, the burden then shifts to the defendant who may offer evidence of his reasonable belief that he has a property right, such as that of an owner, tenant, lessee, licensee or invitee." *Id.*

5

Here, the state presented evidence that McKenzie was a uniformed security officer who worked at the grocery store and approached Heath in his capacity as a security officer. McKenzie told Heath that he was "86'd for the night," which meant that "[Heath could not] come back in the store and do business for the night." When Heath did not leave the store immediately, McKenzie told him, "'Take the dog and go outside. You are 86'd for the night.'" Heath then left the store. From this evidence—which we view in the light most favorable to the verdict, *Fox*, 868 N.W.2d at 223—a reasonable inference can be made that Heath had no claim of right to reenter the store about three minutes later, with or without the dog, because McKenzie expressly had revoked Heath's implied permission to be in the store. And Heath failed to counter with any evidence of his reasonable belief that he had a property right to reenter the store immediately after being told to leave.[1] In fact, Heath presented evidence that McKenzie told him to "'[g]et out'" and to "get out of here right now." The unrebutted evidence is sufficient to prove that Heath reentered the store without claim of right.

Heath also argues that his trespass conviction is not supported by sufficient evidence because the state failed to prove beyond a reasonable doubt that Heath reentered the store

---

[1] Heath claimed at trial, and continues to claim on appeal, that the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (2012), entitles him to be accompanied by his unleashed service dog in any place of public accommodation. Any such *statutory* right to be accompanied by the dog is irrelevant to the question of whether Heath had a reasonable belief that he had a *property* right to reenter the store in the early morning hours of November 30, 2014. *See Brechon*, 352 N.W.2d at 750 ("Subjective reasons not related to a claimed property right or permission are irrelevant and immaterial to the issue of claim of right.").

"*with the knowledge* that he was prohibited from doing so." Although Heath frames this argument as an attack on the state's proof of mens rea, the argument is not substantively distinct from the claim-of-right argument discredited above and warrants no separate analysis here. We conclude that sufficient evidence supports Heath's conviction of trespass.

Heath continues by arguing that the district court plainly erred in instructing the jury on defense of others. Because Heath did not object in district court to the combined defense-of-self-or-others instruction, that instruction is reviewed for (1) error, (2) that is plain, and (3) that affects Heath's substantial rights. *State v. Wenthe*, 865 N.W.2d 293, 299 (Minn. 2015), *cert. denied*, 136 S. Ct. 595 (2015). "Jury instructions that confuse, mislead, or materially misstate the law are erroneous." *State v. Davis*, 864 N.W.2d 171, 176 (Minn. 2015). "An error is plain if it contravenes case law, a rule, or a standard of conduct." *State v. Hokanson*, 821 N.W.2d 340, 356 (Minn. 2012) (quotation omitted). A defendant meets his "heavy burden" to prove that an instructional error affects his substantial rights by showing "a reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Wenthe*, 865 N.W.2d at 299 (quotations omitted).

The defense-of-self-or-others instruction, as relevant here, was given as follows:

> Self-defense or defense of others. The defendant is not guilty of a crime if the defendant used reasonable force against Diallo McKenzie to resist or to aid [L.K.] in resisting an offense against the person and such an offense was being committed or the defendant reasonably believed that it was. It is lawful for a person who is being assaulted and who has reasonable grounds to believe that bodily injury is about to be

7

inflicted upon the person to defend from an attack. In doing so, the person may use all force and means that the person reasonably believes to be necessary and that would appear to a reasonable person in similar circumstances to be necessary to prevent an injury that appears to be imminent.

An assault is the intentional infliction of bodily harm upon another or an intentional attempt to inflict bodily harm upon another or an act done with intent to cause fear of immediate bodily harm or death in another.

The kind and degree of force a person may lawfully use in self-defense is limited by what a reasonable person in the same situation would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. The state has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. The rule of self-defense does not authorize one to seek revenge or to take into his or her own hands the punishment of an offender.

Heath assigns error to that instruction on three grounds.

First, Heath argues that the defense-of-self-or-others instruction did not adequately inform the jury of the elements of defense of others. But in light of the instruction's title of "[s]elf-defense or defense of others," and its opening words that "[t]he defendant is not guilty of a crime if the defendant used reasonable force against Diallo McKenzie to resist or to aid [L.K.] in resisting," the instruction describes the elements of both self-defense and defense of others, which are essentially identical. *See Richardson*, 670 N.W.2d at 278 (stating that "defense of another parallels defense of self" (quotation omitted)). Heath identifies no authority disapproving the use of a combined instruction on elements of self-defense and defense of others, and we have found no such authority. Indeed, the Minnesota pattern jury instructions include a self-defense instruction with just two optional parenthetical additions for defense of others, 10 *Minnesota Practice*, CRIMJIG 7.05 (2015),

8

and include no separate instruction for defense of others, *id.* at 7.01–7.10. We conclude that the challenged instruction in this case, which was closely modeled after a prior version of CRIMJIG 7.05, adequately informed the jury of the elements of defense of others.

Second, Heath argues that the defense-of-self-or-others instruction did not adequately inform the jury that the state bore the burden to disprove Heath's claim that he acted in defense of L.K. Heath's second assignment of instructional error fails for the same reason as his first. The instruction's combined treatment of self-defense and defense of others, as evident in its title and opening words, extends through the entire instruction. *Cf.* CRIMJIG 7.05 (providing no optional parenthetical additions for defense of others as to kind and degree of force, duty to retreat, state's burden, or exclusion of revenge and punishment). We therefore conclude that the challenged instruction's unequivocal statement that "[t]he state has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense" adequately informed the jury of the state's burden with regard to defense of others.

Third, Heath complains that the district court "did not expressly indicate that [self-defense and defense of others] applied to the disorderly conduct charges" and "read the instructions for the defenses immediately after the fifth-degree assault instructions without repeating them after the disorderly conduct instructions." Heath is correct that "self-defense is applicable to a charge of disorderly conduct where the behavior forming the basis of the offense presents the threat of bodily harm." *State v. Soukup*, 656 N.W.2d 424, 429 (Minn. App. 2003), *review denied* (Minn. Apr. 29, 2003). But the jury rejected Heath's defenses as to the assault charge, and the disorderly-conduct charges arose from the same

9

facts as the assault charge. Heath cannot show a reasonable likelihood that a different or differently-timed instruction would have led the jury to accept his defenses as to the disorderly-conduct charges; we therefore conclude that any instructional error did not affect Heath's substantial rights.

Heath also argues that the district court plainly erred by instructing the jury on trespass because the court did not inform the jury that trespass requires a defendant's reentry in the absence of his good-faith belief that such reentry was permitted. But the court instructed the jury that the second element of trespass is that

> the defendant acted without claim of right to the property or consent of one who had the authority to consent. Claim of right is defined as a bona fide claim by the defendant of title to or ownership of the premises or a bona fide claim by the defendant or expression of limited permission given the defendant by the lawful possessor of the premises or someone authorized by the lawful possessor to give such permission or a bona fide claim by the defendant that permission is given to the defendant to be upon the premises by a statute, rule or regulation duly promulgated by a federal or state agency.

The court therefore correctly instructed the jury that it could find Heath guilty of trespass only if it found that Heath reentered the grocery store without a reasonable belief that he had a property right or permission to do so. *See Brechon*, 352 N.W.2d at 750 ("If the state presents evidence that defendant has no claim of right, the burden then shifts to the defendant who may offer evidence of his reasonable belief that he has a property right, such as that of an owner, tenant, lessee, licensee or invitee. Subjective reasons not related to a claimed property right or permission are irrelevant and immaterial to the issue of claim

of right." (citation omitted)). We conclude that the trespass instruction did not misstate the law.

**Affirmed.**