**STATE of Minnesota, Respondent,**

v.

**Christopher Thomas WENTHE, Appellant.**

**No. A12–0263.**

Court of Appeals of Minnesota.

April 7, 2014.

226

Lori Swanson, Attorney General, St. Paul, MN; and John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, MN, for respondent.

Paul Engh, Minneapolis, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; HOOTEN, Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Following appellant's conviction of third-degree criminal sexual conduct, he asserts district court errors in (1) failing to instruct the jurors that they must unanimously agree that one of several proven acts constituted the single meeting in which the victim sought or received religious or spiritual advice, aid, or comfort; (2) failing to instruct the jury that the state must prove that appellant knew the complainant sought or received religious or spiritual advice, aid, or comfort during a meeting in which sexual conduct occurred; and (3) excluding evidence of the complainant's sexual history where the state opened the door to the topic during her direct testimony and in closing argument. Because there is merit in these assertions of error, we reverse and remand for a new trial. There is no reversible error on other issues—in the district court's exclusion of appellant's proposed expert testimony or in the court's denial of appellant's request to instruct the jury that the state must prove that the "primary purpose" of the meeting was to seek religious or spiritual advice, aid, or comfort.

## FACTS

Appellant Christopher Thomas Wenthe was a newly ordained Roman Catholic priest serving a St. Paul parish when he first met A.F. in July 2003 at a church picnic. A.F., an adult member of the parish, had recently converted to Catholicism and was enthusiastic about her new faith. After the picnic, A.F. offered appellant a ride to the rectory. They chatted for 15–20 minutes in the parking lot. A.F. felt that they had much in common. In late September 2003, A.F. asked appellant to serve as her regular confessor, and appellant agreed, although he had never before served in this role. Appellant heard A.F.'s confession at the rectory the evening of October 5.

In the ensuing weeks, a personal friendship developed between A.F. and appel-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

lant. They spent time together, called each other, and shared concerns about their personal lives. A.F. shared her personal struggles with an eating disorder and sexual abuse as a child, and appellant confided in A.F. about his insecurities and anxieties regarding the priesthood. On one occasion they watched a movie together in appellant's private quarters at the rectory. In mid-October, A.F. met appellant's family when she drove appellant to his childhood home to collect hunting equipment. When appellant was ill, A.F. brought soup to him. They often talked late into the night. In early November 2003, A.F. went to appellant's private quarters to give him a book about a struggling Catholic priest in a rural parish, which she believed would help ease his anxieties.

On November 8, 2003, A.F. invited appellant to her apartment for dinner to celebrate his birthday. They had wine with dinner and talked for many hours. On November 12, 2003, they had a telephone conversation that lasted until early the next morning. The conversation focused on topics of religion and sexuality, including Pope John Paul II's commentary on the *Theology of the Body* about Roman Catholic views on marriage and sexuality. Because they talked through the night, appellant canceled his hunting trip. A.F. was nervous about a counseling session she had later that day with her therapist, and appellant encouraged her to go. Appellant testified that, at the end of the phone call, they agreed to meet that night. A.F. testified that appellant invited her to call after her session, and that when she did so, he invited her to his residence. Sexual conduct occurred during the course of this meeting.

A.F. testified that a second incident occurred on November 14, 2003, at a meeting she initiated to talk about what happened the previous night and to discuss why this could not happen again. Appellant denied the contact on November 14 but testified that a second sexual incident occurred at his private residence about two weeks later. A.F. testified that a pattern of sexual behavior developed in which the sexual encounters occurred about every two weeks over the course of a year, generally at A.F.'s apartment. Appellant testified that the encounters were less frequent and that they had "periods of abstinence." The final sexual encounter occurred in January or February of 2005 before A.F. entered a treatment program for her eating disorder.

A.F. did not contact police to report the sexual conduct until April 2010; she explained that the delay was due to her dissatisfaction with the way the diocese handled her disclosure of the sexual conduct. Based on these events, the state charged appellant with one count of third-degree criminal sexual conduct, in violation of Minn.Stat. § 609.344, subd. 1(*l*)(ii) (2002), for sexual conduct that occurred while the victim was meeting with the defendant on an ongoing basis for spiritual counsel—"to seek or receive religious or spiritual advice, aid, or comfort in private." The state subsequently amended the complaint to include a second count under subdivision 1(*l*)(i) (2002), alleging sexual conduct that occurred during the course of a single meeting "in which the complainant sought or received religious or spiritual advice, aid, or comfort from the actor in private." The district court instructed the jury that their verdict must be unanimous, but the court did not tell the jurors they had to unanimously agree on which act comprised the single-meeting element of clergy sexual conduct. The jury acquitted appellant of count one but convicted him of count two.

Appellant raised several issues on direct appeal. This court initially reversed appellant's conviction and remanded for a new trial, holding that the clergy-sexual-conduct statute, as applied, violated the Establishment Clause because excessive evidence regarding religious doctrine or internal church practices was introduced at trial. *State v. Wenthe*, 822 N.W.2d 822 (Minn.App.2012). The supreme court reviewed our decision and held that the clergy-sexual-conduct statute does not facially violate the Establishment Clause and that appellant failed to prove that the statute, as applied, violated the Establishment Clause. *State v. Wenthe*, 839 N.W.2d 83 (Minn.2013). The supreme court reversed and remanded to this court to consider appellant's additional assertions of error. *Id.* at 95 n. 5.

## ISSUES

I. Did the district court commit reversible error by failing to instruct the jurors that they must unanimously agree on the single-meeting element of clergy sexual conduct?

II. Did the district court abuse its discretion in failing to instruct the jury that appellant must know that A.F. sought or received spiritual or religious advice, aid, or comfort at the single meeting?

III. Did the district court abuse its discretion by excluding evidence of A.F.'s sexual history, despite rape-shield laws, where the state opened the door to this evidence?

IV. Did the district court abuse its discretion by excluding testimony to explain A.F.'s delayed reporting, or in failing to instruct the jury that the state must prove the "primary purpose" of the single meeting?

## ANALYSIS

### I.

■ Appellant argues that the district court erroneously denied his constitutional right to a unanimous verdict by failing to instruct the jury that each juror must agree on the event satisfying the single-meeting element of clergy sexual conduct. The charge of conviction, third-degree criminal sexual conduct, alleged sexual penetration during a single meeting that occurred "[o]n or between the 1st day of November, 2003 and the 31st day of December, 2003." Trial testimony described at least three possible meetings during this time that might satisfy the single-meeting element of the offense: November 13, when A.F. accepted an invitation to appellant's rectory apartment; a second encounter, identified by A.F. but denied by appellant, on November 14, when A.F. asked to discuss avoiding what had happened on November 13; and an encounter approximately two weeks after the November 13 encounter, identified by appellant.

Although appellant objected to the amendment of the complaint to add this count on the ground of lack of specificity concerning the date of the meeting, he did not request an instruction advising the jury that they must unanimously agree on which of the meetings constituted the single-meeting element, nor did he object to the district court's general unanimity instruction. During final argument, the prosecutor specifically referenced the first incident on November 13, but the prosecutor also told the jury they could find appellant guilty if any of the meetings during the relevant time period involved religious or spiritual advice, aid, or comfort. The state argued that A.F.

has talked about many meetings where she talked about receiving religious advice and comfort where there was sexual penetration, but, specifically, there's def-

initely that very first one, the day she came from that counseling appointment. The time period for this charge is November 1st of 2003 to December 31st of 2003. So if there were any meetings where sexual contact occurred during the course of providing religious aid, comfort and advice, the defendant is guilty.

■ Because appellant did not object to the jury instructions at trial, we review for plain error. *State v. Vance*, 734 N.W.2d 650, 655 (Minn.2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn.2012). "Under this standard, we may review an unobjected-to error only if there is (1) error; (2) that is plain; and (3) that affects substantial rights." *Id.* at 655–56. If these three prongs are met, "we then decide whether we must address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Milton*, 821 N.W.2d 789, 805 (Minn.2012) (quotation omitted).

■ "[D]istrict courts have latitude in choosing jury instructions." *State v. Hayes*, 831 N.W.2d 546, 555 (Minn.2013). In our analysis, "we review the jury instructions in their entirety to determine whether the instructions fairly and adequately explain the law of the case." *Milton*, 821 N.W.2d at 805 (quotation omitted). A jury instruction that materially misstates the law, however, is error. *Vance*, 734 N.W.2d at 656.

■ "Jury verdicts in all criminal cases must be unanimous." *State v. Pendleton*, 725 N.W.2d 717, 730 (Minn.2007) (citing Minn. R.Crim. P. 26.01, subd. 1(5)). The jury must unanimously agree that the government proved each element of the charged offense. *Id.* at 730–31. Unanimity is not required with respect to alternate means or ways of satisfying an element of the offense. *See State v. Ihle*, 640 N.W.2d 910, 918 (Minn.2002). Thus, a jury need

not unanimously decide "which of several possible sets of underlying brute facts make up a particular element," such as whether a defendant used a knife or a gun to threaten force in a robbery, so long as the jury unanimously concludes that the state proved the necessary element that the defendant threatened force. *See Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 1710, 143 L.Ed.2d 985 (1999). "On the other hand, the jury must unanimously agree on which acts the defendant committed if each act itself constitutes an element of the crime." *State v. Stempf*, 627 N.W.2d 352, 355 (Minn.App. 2001).

Caselaw illustrates the difference between alternative means of committing a single element of an offense, which does not require jury unanimity, and alternative acts, each of which may support an element, which requires unanimity. Thus, a jury does not have to unanimously agree on the alternative means in which a person can obstruct legal process because the alternative behaviors described in the statute are similar types of conduct committed as part of a single behavioral incident. *See Ihle*, 640 N.W.2d at 919 (noting a person commits the crime of obstruction if he "obstructs," "hinders," "prevents," "resists," or "interferes" with a police officer executing legal process, taking someone into custody, or performing official duties) (citing Minn.Stat. § 609.50, subd. 1(1),(2)). Similarly, the jury does not have to unanimously agree on the alternative means of committing first-degree criminal sexual conduct, i.e., whether the defendant caused the complainant to have reasonable fear of imminent bodily harm or caused personal injury and used force or coercion to accomplish the sexual penetration. *See State v. Hart*, 477 N.W.2d 732, 737–39 (Minn.App. 1991), *review denied* (Minn. Jan. 16, 1992). But in *Stempf*, this court held that when

the state charges one count of possession of a controlled substance but alleges two distinct acts to support the conviction, i.e., possession of methamphetamine at work and possession of methamphetamine in a truck, and the defendant has different defenses for each alleged act, the jury must unanimously agree on which act the defendant committed. 627 N.W.2d at 357–58. Because the state's evidence in *Stempf* involved different acts, each of which could satisfy the single element of possession, the jury could not convict unless it unanimously agreed on the act of possession. *See id.*

The rationale in *Stempf* applies here. Third-degree criminal sexual conduct under section 609.344, subdivision 1(*l* )(i), requires proof of sexual conduct during a single meeting in which religious advice, aid, or comfort is sought. This statute is different from subdivision 1(*l* )(ii), involving sexual conduct on an ongoing basis. The distinguishing feature is the single-meeting element: appellant is only guilty of a crime if the meeting is one in which spiritual or religious advice, aid, or comfort was sought or received. The evidence at trial included at least three possible meetings from November 1 to December 31, 2003, in which A.F. and appellant engaged in sexual conduct. Although the events occurred differently, A.F. maintained that spiritual comfort was always the purpose of their meetings. Appellant disputed this contention, and the jury's acquittal on

count one involving sexual conduct on an ongoing basis suggests that the jurors gave credence to his testimony. Because the nature of the meeting is essential for a conviction of clergy sexual conduct, and trial testimony described three possible meetings within the relevant period, the district court's instructions may have led the jurors to believe that they did not have to agree on the act that satisfied the single-meeting element. Thus, the district court erred by failing to instruct the jurors that they must unanimously agree on the single meeting.[1]

Having concluded that the district court erred, the next question is whether the error is plain. An error is plain "if the error contravenes case law, a rule, or a standard of conduct." *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Our cases have previously held that "[w]here jury instructions allow for possible significant disagreement among jurors as to what acts the defendant committed, the instructions violate the defendant's right to a unanimous verdict." *Stempf*, 627 N.W.2d at 354 (citing *State v. Begbie*, 415 N.W.2d 103, 105 (Minn.App. 1987), *review denied* (Minn. Jan. 20, 1988)). Because the erroneous jury instructions violated caselaw, the error was plain.

An error affects substantial rights if it is "prejudicial and affect[s] the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn.1998). An appel-

---

1. The specific date of criminal sexual conduct does not always have to be proved. *See State v. Rucker*, 752 N.W.2d 538, 547–48 (Minn. App.2008) (rejecting unanimous verdict argument where child victims testified about ongoing abuse, the prosecution did not emphasize or distinguish the proof of some incidents compared to others or encourage the jury to find certain incidents were more likely to have occurred than others, and appellant did not raise different defenses to each incident), *review denied* (Minn. Sept. 23, 2008). But

child-sex-abuse cases present an exception to the rule requiring agreement on the specific underlying criminal incident. *Richardson*, 526 U.S. at 821, 119 S.Ct. at 1712. And *Rucker* is not controlling here because the victim in the instant case is an adult, the charge does not involve ongoing sexual conduct but is limited to sexual conduct during a single meeting, and the nature or purpose of the meeting is what makes the sexual conduct criminal.

lant has the burden of proving the prejudice prong of the plain-error test. *Id.* "The court's analysis under the third prong of the plain error test is the equivalent of a harmless error analysis." *State v. Matthews,* 800 N.W.2d 629, 634 (Minn. 2011). "An error in instructing the jury is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury's verdict." *State v. Watkins,* 840 N.W.2d 21, 28 (Minn.2013) (quotation omitted).

> If, after an analysis of the record and a consideration of all relevant factors, we conclude that the erroneous omission of the instruction might have prompted the jury, which is presumed to be reasonable, to reach a harsher verdict than it might have otherwise reached, defendant must be awarded a new trial.

*State v. Shoop,* 441 N.W.2d 475, 481 (Minn. 1989).

In its final argument, described above, the state referenced the first incident on November 13 but also told the jury that it could find appellant guilty if any of the meetings during the relevant time period involved religious or spiritual advice, aid, or comfort. Because the district court's erroneous instructions did not require jurors to determine on which date the single-meeting element occurred, this is not a scenario where different jurors may have been "persuaded by different pieces of evidence even when they agree upon the bottom line." *See State v. Crowsbreast,* 629 N.W.2d 433, 439 (Minn.2001) (quotation omitted) (holding no unanimity problem where past pattern of domestic abuse was preliminary factual element and did not require jurors to unanimously agree on individual acts of domestic abuse that comprised the pattern element). The jury heard contrasting testimony as to the circumstances surrounding the first and later sexual encounters, particularly respecting

the facts as to whether or not the complainant sought or received spiritual advice. In these circumstances, especially in light of the prosecutor's argument to the jury, the erroneous omission of an instruction that the jury could not reach a guilty verdict unless it unanimously agreed on the act that constituted the single-meeting element affected the jury's verdict.

Because the omission of a unanimity instruction affected the verdict and therefore also affected appellant's substantial rights, "we must consider the fourth prong of the plain-error test: whether a new trial is required to ensure the fairness, integrity, and public reputation of judicial proceedings." *Watkins,* 840 N.W.2d at 30–31. Whether the crime of clergy sexual conduct involving a single meeting has occurred depends on the nature or purpose of the meeting. Given the conflicting testimony in this case, the omission of a unanimity instruction with respect to the single-meeting element may very well require a new trial to ensure the fairness, integrity, and public reputation of judicial proceedings. Regardless, we address appellant's additional assertions of error because the combination of errors deprived appellant of a fair trial.

## II.

■ Appellant argues that the district court erred in omitting a mens rea requirement from the single-meeting element of clergy sexual conduct. The district court instructed the jury that the only intent required was that "the defendant intentionally sexually penetrated [A.F.]" 10 *Minnesota Practice,* CRIMJIG 12.35 (2006). Appellant had requested that the district court instruct the jury that the word "intentionally" also applied to the other elements of the offense, including that appellant intended to give religious or spiritual aid and comfort.

■ We review a district court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Ndikum,* 815 N.W.2d 816, 818 (Minn.2012). But where the issue involves the interpretation of a statute, which is a question of law, our review is de novo. *Id.*

■ "Mens rea is the element of a crime that requires 'the defendant know the facts that make his conduct illegal.'" *Id.* (quoting *Staples v. United States,* 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994)). Criminal sexual conduct has generally been considered a general-intent crime. *See Hart,* 477 N.W.2d at 736 (noting absence of intent element in first-degree criminal sexual conduct statute created a general-intent crime); *State v. Lindahl,* 309 N.W.2d 763, 767 (Minn. 1981) (noting that "rape" has generally but not unanimously been viewed as a general-intent crime). Because a general-intent crime prohibits a person from voluntarily engaging in prohibited conduct, "it is enough that the offender intend to do the act proscribed." *See State v. Wilson,* 830 N.W.2d 849, 853 (Minn.2013) (quotation omitted). Specific intent, on the other hand, is used to designate a special mental element, "which is required above and beyond any mental state required with respect to the actus reus of the crime." *Fleck,* 810 N.W.2d at 308 (quoting 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e) (2nd ed.2003)). When the legislature intends that a crime have a specific intent, the legislature commonly expresses this requirement by the phrase "with intent to." *See id.* n. 3 (citing Minn. Stat. § 609.02, subd. 9(1), (4) (2010)).

Although most criminal sexual conduct offenses require only proof of general intent to engage in sexual penetration, some require proof of specific intent. For example, criminal sexual conduct involving sexual contact is a specific-intent crime because sexual contact requires proof of "sexual or aggressive intent." *State v. Austin,* 788 N.W.2d 788, 792 (Minn.App.2010) (quoting Minn.Stat. § 609.341, subd. 11(a) (2006)), *review denied* (Minn. Dec. 14, 2010). Third-degree criminal sexual conduct involving an impaired victim who is incapable of consenting also requires proof of specific intent because it requires proof that the defendant either knows or has reason to know of the victim's condition. Minn.Stat. § 609.344, subd. 1(d) (2012).

The clergy-sexual-conduct statute does not, on its face, require an additional element of intent, only that "the sexual penetration occurred during the course of a meeting in which the complainant sought or received religious or spiritual advice, aid, or comfort from the actor in private." Minn.Stat. § 609.344, subd. 1(*l*)(i). But the absence of language suggesting that specific intent is required does not end our analysis because the requirement may be inferred, and we construe criminal statutes consistent with other similar statutes. *See State v. Orsello,* 554 N.W.2d 70, 75 (Minn. 1996) (noting that parallels between existing criminal statutes requiring specific intent and stalking statute "militate toward finding that the stalking statute also requires specific intent"), *superseded by statute as stated in State v. Collins,* 580 N.W.2d 36 (Minn.App.1998), *review denied* (Minn. July 16, 1998).

Unlike other criminal sexual conduct offenses, consent is not a defense to clergy sexual conduct. *See State v. Bussmann* (*Bussmann I* ), 741 N.W.2d 79, 84 (Minn. 2007) (discussing section 609.344, which generally criminalizes sexual penetration in various defined situations and removes consent as a defense in many of these situations). This may be explained by the fact that section 609.344 criminalizes conduct toward a victim who is vulnerable or when the defendant is in a position of

authority over the victim by age, significant relationship, or professional relationship, such as psychotherapist, massage therapist, or clergy member. *See id.* at 84–86, 88.

Sexual intercourse between a clergy member and a parishioner who is not the clergy member's spouse is not a crime unless it occurs at a meeting in which the parishioner "sought or received religious or spiritual advice, aid, or comfort from the actor in private." Minn.Stat. § 609.344, subd. 1(*l* )(i)-(ii). As the plurality observed in *Bussmann I,* there is cause for concern that an unmarried clergy member who had sexual intercourse with a parishioner he or she was dating might be guilty of a crime if the two also discussed spiritual or religious matters. 741 N.W.2d at 89. Requiring proof of a particularized knowledge to satisfy the single-meeting subdivision would also take into account that a clergy member is not always in a position of power over a parishioner. *See id.* at 88, 92. And it would be consistent with other provisions in section 609.344, which do not presume a vulnerable victim but require proof of the pre-existence of a mental or emotional condition or that the actor uses deceptive conduct. *See id.* at 88 (comparing the psychotherapist-sexual-conduct subdivisions with clergy sexual conduct).

Requiring knowledge of the religious or spiritual purpose of the meeting is also supported by the clergy-privilege statute. *See id.* at 83. The clergy evidentiary privilege prohibits disclosure of confessions and communications made in a clergy member's "professional character." Minn.Stat. § 595.02, subd. 1(c) (2012). The question of whether the privilege applies requires an examination of facts to show that the communication falls within the scope of the privilege. *State v. Lender,* 266 Minn. 561, 564, 124 N.W.2d 355, 358 (1963); *see also* *Doe v. F.P.,* 667 N.W.2d 493, 499 (Minn. App.2003) ("Whether a communication is of a religious or spiritual nature is a question of fact frequently addressed by the courts in the context of the application of the clergy privilege."), *review denied* (Minn. Oct. 21, 2003). The clergy-privilege statute only covers confessions made to the clergy member in a "professional character" and communications made to the clergy member "by any person seeking religious or spiritual advice, aid, or comfort or advice given thereon in the course of the member of the clergy's or other minister's professional character." Minn.Stat. § 595.02, subd. 1(c). Requiring proof that the meeting was within the clergy member's "professional character" implies requiring proof that the clergy member know that his or her advice, aid, or comfort was being sought in his or her professional role as a clergy member.

Because the spiritual or religious nature or purpose of the meeting is what makes the sexual conduct a crime, the statute requires proof that a defendant had a particular mental state. *See Orsello,* 554 N.W.2d at 76–77 (reading specific intent into the stalking statute). Because there was disputed testimony about the purpose of the meetings, the failure to instruct the jury that, to find appellant guilty, the state had to prove appellant must know the religious or spiritual nature or purpose of the meeting may very well have affected the verdict. *See State v. Pendleton,* 567 N.W.2d 265, 270–71 (Minn.1997) (reversing conviction where there was evidence to support defense theory, the instructions misstated the law, and the error was not harmless because the erroneous jury instruction eliminated the defense from the jury's consideration).

### III.

■ Appellant argues that the district court denied his due-process right to pres-

ent a defense by excluding evidence of A.F.'s sexual history. Appellant filed a pretrial motion in limine seeking to cross-examine A.F. about her past sexual practices to show a source of her sexual knowledge and to explain how the relationship became sexual. The state intended to limit this evidence to the sexual abuse A.F. suffered as a child and objected to the admission of other evidence as prohibited by rape-shield laws. Minnesota's rape-shield laws preclude admission of evidence of the victim's previous sexual conduct, unless consent is a defense or the evidence is relevant to refute the state's physical evidence. Minn.Stat. § 609.347, subd. 3 (2012); Minn. R. Evid. 412. The district court denied appellant's motion, concluding that because consent was not an issue, rape-shield laws precluded admission of the evidence.

At trial, contradicting its pretrial statement on its intentions, the state elicited evidence to demonstrate that A.F. was sexually inexperienced. On direct examination, the prosecutor and A.F. had the following exchange:

Q. In addition to you performing oral sex or fellatio on him, and the anal sex, was there any other kind of penetration?

In that sense I mean did he—did he ever perform oral sex on you?

A. Yes, eventually, again, not initially, but eventually he did. I—I'd never done anything like that before, and I trusted him.

It all sounds really crazy now, but at some point yes, yes, he did.

. . . .

Q. Apart from being raped as a child, were you a virgin at that time?

A. Yes.

Q. Did the defendant try to convince you to have intercourse with him?

A. No.

Q. Did you let him know that you didn't want to have intercourse?

A. Yes.

Q. Did he indicate to you that if you had anal sex you could maintain your virginity?

A. I don't— [2]

. . . .

Q. Was there any discussion at all about why—having anal sex as opposed to vaginal sex?

A. I think—I don't—I don't recall. I don't recall that. I just—I mean anal sex—you know, you wouldn't get pregnant. And, I mean, that was a fear of his, of course. And it was important to me in some strange way to protect my virginity.

During appellant's testimony, his counsel made an offer of proof concerning how appellant would have testified if permitted to introduce evidence of A.F.'s sexual history. The court stated that its prior ruling would stand.

■■■■ "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Word*, 755 N.W.2d 776, 781 (Minn.App.2008) (quoting *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003)). The appellant has the burden of establishing that the district court abused its discretion and that he was prejudiced. *Id.* Where the district court makes a definitive ruling on the record, a party need not renew the objection to preserve a claim of error. *Id.* at 782.

■■■■ Despite the prohibition in the rape-shield laws, evidence of a victim's past sexual conduct may be admissible where it "is constitutionally required by

**2.** At this point, appellant's objection to the leading questions was sustained.

the defendant's right to due process, his right to confront his accusers, or his right to offer evidence in his own defense." *State v. Benedict*, 397 N.W.2d 337, 341 (Minn.1986). Appellant contends that his due-process right to present a defense required that he be allowed to introduce evidence concerning his knowledge of A.F.'s sexual history because it informed "his intentions as the relationship progressed." We review appellant's assertions only in the context of the trial that led to his conviction, where the state opened the door to evidence that A.F. previously had adult sexual relationships. "Opening the door occurs when one party by introducing certain material ... creates in the opponent a right to respond with material that would otherwise have been inadmissible." *State v. Bailey*, 732 N.W.2d 612, 622 (Minn.2007) (quotation omitted). Despite agreeing to limit A.F.'s prior sexual history to the abuse she suffered as a child, the state elicited testimony that A.F. had never before engaged in cunnilingus, that she was a virgin at the time she engaged in sexual conduct with appellant, and that A.F. engaged in anal sex to "protect [her] virginity." During closing argument, the prosecutor also referred to A.F. as "naïve, vulnerable, inexperienced," compared to appellant, who had been in adult sexual relationships before he became a priest.

Given these door-opening circumstances, the district court abused its discretion in precluding appellant from introducing evidence of A.F.'s sexual history. *See State v. Carroll*, 639 N.W.2d 623, 628 (Minn.App. 2002) (reversing conviction where district court erroneously precluded appellant from cross-examining the victim about her conflicting versions of appellant's activity and that of another man she accused of the same activity where both statements were introduced into evidence). And weighing the potential that evidence of A.F.'s prior adult sexual relationships would have to show a source of sexual knowledge independent of her experiences with appellant, we cannot say that precluding appellant from cross-examining A.F. about her sexual history was harmless beyond a reasonable doubt. *State v. Pride*, 528 N.W.2d 862, 867 (Minn.1995) (applying harmless-beyond-a-reasonable-doubt standard to district court's error in precluding cross examination of victim about her romantic relationship with investigating police officer).

## IV.

Appellant makes two other claims of error: (1) the district court abused its discretion in precluding expert testimony to explain a link between childhood sexual abuse and "sexual ambivalence" to explain A.F.'s delayed reporting; and (2) the district court abused its discretion in refusing to instruct the jury that the state had to prove that the "primary purpose" of the meeting with A.F. was to provide religious or spiritual advice, aid, or comfort. It is not evident that the expert testimony on delayed reporting would have been helpful to the jury or that it has foundational reliability. *See* Minn. R. Evid. 701, 702. And the supreme court did not hold, as appellant suggests, that the "primary purpose" of the meeting is an element of the single-meeting offense. *See Bussmann I*, 741 N.W.2d at 92 (discussing the "primary purpose of the ongoing meetings"). Moreover, omission of a "primary purpose" instruction was harmless because appellant's defense theory was that religious or spiritual advice, aid, or comfort had ended and no longer accompanied the sexual relationship.

## DECISION

Although the individual errors each may have affected the jury's verdict, we reverse

because of the cumulative effect of the errors. The district court's (1) failure to instruct the jury to unanimously agree on the single-meeting element during which A.F. sought or received religious or spiritual advice, aid, or comfort, (2) failure to instruct the jury that appellant must know the religious or spiritual nature or purpose of the meeting, and (3) evidentiary error in precluding appellant from introducing evidence to rebut A.F.'s testimony that she was sexually inexperienced deprived appellant of his right to a fair trial. *See State v. Penkaty,* 708 N.W.2d 185, 206 (Minn.2006) (reversing and remanding for new trial where cumulative effect of evidentiary errors excluding relevant defense evidence and denying requested jury instructions deprived defendant of a fair trial). Appellant's conviction of third-degree criminal sexual conduct is reversed, and we remand to the district court for further proceedings.

**Reversed and remanded.**