*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0757**

State of Minnesota,
Respondent,

vs.

Christopher Path,
Appellant.

**Filed April 15, 2024**
**Reversed and remanded**
**Larkin, Judge**

Ramsey County District Court
File No. 62-CR-19-8526

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Paul Engh, Minneapolis, Minnesota; and

Joseph S. Friedberg, Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Ross, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his conviction of criminal sexual conduct, arguing that the district court abused its discretion and violated his right to present a defense by excluding

evidence at his jury trial.  Specifically, the district court ruled that appellant's sister could not provide testimony contradicting the complaining witness's testimony that she was sexually assaulted by both appellant and his sister.  Because the state opened the door to the proffered testimony and limited testimony on that issue would not have violated Minn. R. Evid. 403, the district court abused its discretion by prohibiting the proffered testimony.  And because that error was constitutional and not harmless beyond a reasonable doubt, we reverse and remand for a new trial.

## FACTS

In November 2019, respondent State of Minnesota charged appellant Christopher Path with one count of first-degree criminal sexual conduct, alleging that on a single occasion between December 2015 and December 2018, he digitally penetrated his cousin EN's vagina when she was under 13 years of age.  Although that was the only charged offense, the complaint alleged that Path had sexually assaulted EN on two different occasions in two different locations:  first, at Path's mother's home in Ramsey County (the charged offense) and second, in the Wisconsin Dells (the Wisconsin offense).

The allegations in the complaint were based in part on a statement EN provided to a nurse from the Midwest Children's Resource Center (MCRC) in October 2019.  In that statement, EN alleged two instances of abuse by Path.  First, EN alleged that Path digitally penetrated her vagina one time at Path's mother's home while she was sleeping.  Second, EN alleged that Path digitally penetrated her vagina one time during a family camping trip in the Wisconsin Dells while she was sleeping.

2

Prior to trial, EN met with the prosecutor and made a statement that was inconsistent with her MCRC statement. Specifically, EN told the prosecutor that Path's sister, TP, committed the Wisconsin offense. EN denied telling MCRC that Path committed the Wisconsin offense. The state disclosed EN's inconsistent statement to the defense. Then, the state moved the district court to exclude any testimony from TP regarding the Wisconsin offense, arguing that such evidence was inadmissible extrinsic evidence.

The defense objected on several grounds, arguing, in part, that the defense was entitled to present TP's testimony that she did not abuse EN because the jury was "entitled to believe that nobody molested [EN] in Wisconsin, as opposed to [that EN] just made a mistake between brother and sister." The district court deferred its ruling on the state's motion until it heard EN's testimony.

Even though the state sought to limit the defense's presentation of evidence regarding the Wisconsin offense, that offense featured prominently in the state's case. In its opening statement, the prosecutor informed the jury that, in addition to the charged offense, there had been an allegation that Path sexually assaulted EN in the Wisconsin Dells, but that EN would testify that Path was not the person who committed the Wisconsin offense. Then, the prosecutor asked EN about the Wisconsin offense during her direct examination. In addition to describing the charged offense, EN testified that:

- A "second incident of abuse" occurred in the Wisconsin Dells on July 4, of an unknown year.
- It occurred after Path had sexually assaulted EN at his mother's home.
- It occurred while EN was in the Wisconsin Dells on a family trip.
- Path, Path's wife, TP, and another cousin from Vietnam were on that trip with EN.
- The family members stayed in tents.

3

- Some of the family members, including TP, consumed alcohol.
- EN slept on the floor on the left side of a tent. Path and his wife slept on a mattress on the left side of EN. TP slept on EN's right side.
- EN was sleeping and felt "the person on [her] right side" grab her breasts and then felt that person "put a finger in" her and "then a second one, then they put in a third, and it kept going like that."
- EN knew that TP was the person who "was doing this" because TP was the only person on EN's right side.
- EN also knew that it was TP because "[s]he had long nails, so that was a key point," and the next morning, EN saw that one of TP's fingernails was broken.
- EN kept her eyes shut while the alleged assault occurred.
- When it ended, EN opened her eyes and saw TP outside of the tent.

The defense did not object to EN's testimony describing the Wisconsin offense. However, at that point, the district court had not ruled on the state's motion to prevent the defense from calling TP as a witness to rebut EN's accusation.

During her direct and cross-examination, EN denied telling MCRC that Path committed the Wisconsin offense. The defense attempted to impeach EN with her inconsistent MCRC statement, but EN repeatedly said that she did not remember what she had told MCRC.

The nurse that conducted EN's MCRC interview testified, and a video of the MCRC interview was received as evidence. The video shows, and the MCRC nurse acknowledged, that EN told the nurse that Path committed the Wisconsin offense.

In addition to presenting evidence about the charged offense and the Wisconsin offense, the district court allowed the state to admit evidence that Path sexually abused another individual, SS. SS testified that Path is her cousin and that he is four years older. SS testified that Path sexually abused her from when she was "a very young age" until she was 13. SS testified that the alleged abuse included oral sex, as well as vaginal and anal

4

penetration. According to SS, the last instance of abuse occurred in Path's parents' bedroom.

SS reported the alleged abuse, and the police investigated her allegations. SS testified that during that investigation, she denied that Path had sexually abused her, in an effort to protect her mother. SS testified that after learning about EN's allegations against Path, she spoke with EN, and EN told her that Path had digitally penetrated her vagina. SS testified that she told EN that "the same thing happened" to her.

When it came time for the defense to call TP as a witness, the district court addressed the state's pending motion to prevent TP from testifying for the defense. The defense argued:

> If you don't let [TP] testify, the jury will assume that either [TP] did it or that the child, [EN], is making a mistake about it, and . . . the [c]ourt will leave the jury with a false inference that something did indeed occur in Wisconsin. We are seeking to avoid a false inference on the record that something occurred when it didn't, and we are entitled to rebut a false inference that is offered by the [s]tate. . . . [W]e cannot have a trial which leaves a false inference for the jury. It cannot be done. It's totally unfair. It also goes to her bias and her motive.
>
> And . . . [t]here is a due process right by a defendant to corroborate [the defendant's] testimony.

The defense made an offer of proof, indicating that if called to testify, TP would "vehemently" deny the Wisconsin offense. The district court ruled that TP could not testify regarding the Wisconsin offense, reasoning that such testimony would be "collateral" and would have "nothing to do with proof of the charge in this case, which is the definition of collateral." The district court emphasized that TP's proposed testimony about the

5

Wisconsin offense "has nothing to do with the charge[]," "[i]t's not a case that's been charged," and "[t]he jury doesn't have to decide who did that." The district court succinctly stated its reasoning: "The issue is impeachment and impeachment alone."

The district court allowed the defense to call TP as a witness at trial. But consistent with the district court's ruling, the defense did not ask TP about the Wisconsin offense. TP testified regarding only the charged offense.

Path, who was 34 years old at the time of trial, testified in his own defense and denied the charged offense. Path also denied the Wisconsin offense, noting that it was physically impossible for him to have sexually assaulted EN because she was "five or six feet away" from where he slept in the camping tent. He also testified that he did not "observe [TP] doing anything to [EN] in that tent that night." Finally, Path testified that he did not sexually abuse SS.

In closing argument, the prosecutor addressed the charged offense, the Wisconsin offense, and EN's inconsistent statement regarding the Wisconsin offense as follows:

> If you believe [EN], [Path] engaged in digital penetration of [EN]'s vagina. She told you this in no uncertain terms. The defendant sought her out in the night while she was asleep. He put one finger, then two fingers into her vagina and moved them in and out.
>
> You heard a lot about [the Wisconsin offense] over the course of this trial. You are not here to decide about whether or not the sexual assault in Wisconsin Dells happened. Its purpose is for impeachment. It's to test the credibility of [EN].
>
> There is no question that in the MCRC interview, you watched the video, [EN] uses the phrase "he"—the pronoun "he" on a couple of occasions, at least, when she's referencing the Wisconsin [offense]. When asked by [the nurse], has

6

anybody besides [Path] ever done something like that to you, [EN] responded, no. But the evidence is clear that this was not an intentional lie.

The prosecutor went on to argue that EN's allegation that TP committed the Wisconsin offense was credible. The prosecutor told the jury:

> When [EN] became aware that [Path] was the person being accused in the Wisconsin [offense], she set the record straight in her interview with the Ramsey County Attorney's office, and she disclosed on her records, using her words, that it was [TP] that sexually assaulted her in Wisconsin Dells. And she has consistently maintained that.
>
> . . . .
>
> Think about it. [TP] was someone that [EN] looked up to. They were close. You heard the same from [TP]. They watched countless videos together on makeup tutorials. [TP] taught [EN] how to do her makeup. These were close cousins. There wasn't a huge difference in age between them. Why would [EN] make up this allegation about [TP] if it wasn't true?
>
> [EN] said that [TP] had been drinking at that [Wisconsin] vacation. [EN] corrected and clarified the Wisconsin [offense], despite it being detrimental to this case, [by] opening and exposing her . . . to significant impeachment, but she has not wavered since she clarified that [Path] did not sexually assault her at Wisconsin Dells. She's maintained that. She told you that from the stand. And we couldn't ask for more, to have a witness correct information where someone is being unfairly accused, and now she's being relegated to the status of a person who is completely untrustworthy.

Path moved for a mistrial based on the prosecutor's argument that the jury should credit EN's testimony that TP committed the Wisconsin offense. The defense argued:

> We lodged an objection to the final argument of the [s]tate with respect to [TP]. The [state's] argument was that . . . if it's not true that [EN] made the allegation [against

7

TP], why say it? The argument was [TP] did it—she did it and why—because [EN] said it, [TP] did it, and *it was argued as substantive evidence, as opposed to impeachment*. We believe the argument is improper, in light of the previous rulings of the [c]ourt, and it's completely unfair, because we were not allowed to rebut substantive evidence, and . . . the argument here was never designed to follow the impeachment admissibility, which is why it was admitted, but rather to argue in the end to the jury that it was substantive evidence.

We object. We move to strike that part of the argument of the [s]tate. We move for a mistrial.

(Emphasis added.)

The district court denied the defense's motion for a mistrial, as well as the defense's motion to strike. The jury found Path guilty as charged, and the district court sentenced him to serve 144 months in prison.

Path appeals.

**DECISION**

**I.**

Path raises a single issue in this appeal: Did the district court violate his constitutional right to due process by prohibiting him from presenting extrinsic evidence to contradict EN's testimony that TP committed the Wisconsin offense?

Criminal defendants have a due-process right "to a meaningful opportunity to present a complete defense," which includes the right to present witness testimony. *Loving v. State*, 891 N.W.2d 638, 646 (Minn. 2017) (quotation omitted); *see also* U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. That right, however, "is subject to rules of procedure and evidence designed to assure fairness and reliability in the determination of

8

guilt." *State v. Hannon*, 703 N.W.2d 498, 506 (Minn. 2005). "We review a district court's evidentiary rulings for an abuse of discretion." *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019) (quotation omitted). A district court abuses its discretion if its evidentiary ruling rested on an error of law or is contrary to logic and the record. *Id.*

In ruling that TP could not testify that she did not commit the Wisconsin offense, the district court reasoned that such testimony was collateral because that offense was not charged and the jury did not have to decide whether or not it occurred. The district court's ruling is consistent with well-established principles governing the admission of evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. "Evidence which is not relevant is not admissible." Minn. R. Evid. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. R. Evid. 403.

However, extrinsic evidence of a collateral matter may be admissible to contradict the testimony of a witness. "[C]ontradiction by extrinsic evidence—as opposed to mere impeachment by cross-examination—is permitted only if testimony meets the requirements of Minn. R. Evid. 403." *State v. Gore*, 451 N.W.2d 313, 319 (Minn. 1990). The Minnesota Supreme Court discussed that principle in *State v. Waddell*, explaining:

> An excellent analysis of the topic of exclusion of "collateral" evidence which contradicts testimony previously given by a witness appears in 2 D. Louisell and C. Mueller,

> *Federal Evidence* § 129 (1978). The key point which emerges from that discussion is that use of the adjective "collateral" is not particularly useful in determining whether to bar contradiction by either cross-examination or by independent or extrinsic evidence. A more useful approach is the balancing approach of Minn. R. Evid. 403, that is, the approach of confronting the problem explicitly, "acknowledging and weighing both the prejudice and the probative worth of impeachment." 2 D. Louisell and C. Mueller, *supra*, at 60.

308 N.W.2d 303, 304 (Minn. 1981).

In *Waddell*, the supreme court held that the district court properly allowed a prosecutor to elicit extrinsic evidence regarding defendant's prior criminal conduct because a defense witness testified that she was not afraid of defendant and the purpose of the prosecutor's inquiry was to establish that the witness actually was afraid of defendant and that her fear may have impacted her testimony. *Id.* at 303-04. The *Waddell* court stated, "If defense counsel wanted to prevent the jury from hearing this evidence, he should not have called defendant's girl friend to discredit complainant and he should not have questioned her about her lack of fear of defendant." *Id.* at 304.

The *Waddell* court's statement refers to a doctrine that neither party addressed in briefing: opening the door to evidence that is otherwise inadmissible.[1] The supreme court

---

[1] Path primarily relies on *State v. Goldenstein*, 505 N.W.2d 332 (Minn. App. 1993), *rev. denied* (Minn. Oct. 19, 1993). *Goldenstein* announced the rule that "[i]f the [district] court makes a threshold determination that there is a reasonable probability that child complainants in a criminal sexual conduct prosecution have falsely accused others of sexual abuse, *evidence of the prior false accusations is admissible* to challenge the credibility of the children," the evidence is admissible "as substantive evidence tending to prove the current offense did not occur," and "[t]he exclusion of such evidence violates a defendant's constitutional right to present a defense." 505 N.W.2d at 335 (emphasis added). Path was allowed to present evidence that EN falsely accused him of the Wisconsin offense. The alleged error in this case is that the district court did not go further and allow

addressed that doctrine in a case that is procedurally similar to this case: *State v. Wenthe*, 865 N.W.2d 293 (Minn. 2015). Neither party in this case directly raised the door-opening doctrine or cited to *Wenthe* in their briefs.[2] But when this court raised the issue at oral argument, counsel for the parties acknowledged their familiarity with the doctrine and the supreme court's consideration of the doctrine in *Wenthe*.[3]

"[I]t is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's . . . failure to specify issues or to cite relevant authorities." *Hannuksela*, 452 N.W.2d at 674. Given the unique facts of this case, the door-opening doctrine provides a useful analytical framework.

"Opening the door occurs when one party by introducing certain material creates in the opponent a right to respond with material that would otherwise have been

---

Path to present extrinsic evidence to contradict EN's testimony that TP committed the Wisconsin offense. Because *Goldenstein* does not discuss the use of extrinsic evidence to contradict witness testimony, it is not on point.

[2] In district court, the defense implicitly raised the door-opening issue when arguing that the state had presented substantive evidence regarding the Wisconsin offense.

[3] In fact, the *Wenthe* case was the subject of two appeals that reached the Minnesota Supreme Court, *State v. Wenthe*, 822 N.W.2d 822 (Minn. App. 2012), *aff'd in part and rev'd in part*, 839 N.W.2d 83 (Minn. 2013), and *State v. Wenthe*, 845 N.W.2d 222 (Minn. App. 2014), *rev'd*, 865 N.W.2d 293 (Minn. 2015). The attorneys in this appeal represented the parties in each of the *Wenthe* appeals. Specifically, Paul Engh represented the defendant, and Peter Marker represented the state. Thus, both attorneys were familiar with *Wenthe* and were able to answer this court's questions about *Wenthe*'s potential application here. We therefore see no need for supplemental briefing regarding *Wenthe* or the door-opening doctrine. *See State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (noting an appellate court's obligation to decide cases according to law, even if the lawyers have not cited a relevant authority, and explaining that if such authority discussed a doctrine that was "either novel or questionable, it might be appropriate for the court to solicit additional briefs").

11

inadmissible." *Wenthe*, 865 N.W.2d at 306 (quotations omitted). The doctrine "is essentially one of fairness and common sense, and prevents one party from gaining an unfair advantage." *Id.* (quotations omitted). The doctrine is also based on the proposition that "the factfinder should not be presented with a misleading or distorted representation of reality." *State v. Valtierra*, 718 N.W.2d 425, 436 (Minn. 2006) (quotation omitted).

*Wenthe*, like this case, involved a defendant's appeal from his conviction of criminal sexual conduct. 865 N.W.2d at 296. Like Path in this case, Wenthe argued that the district court violated his due-process right to present a complete defense at his jury trial. *Wenthe*, 845 N.W.2d at 233-34. Before trial, the district court denied Wenthe's motion to admit evidence regarding the complaining witness's sexual history, reasoning that the rape-shield law prevented the admission of such evidence. *Id.* at 234; *see* Minn. Stat. § 609.347, subd. 3 (2014) (generally precluding admission of evidence regarding a sexual-assault victim's prior sexual history); Minn. R. Evid. 412 (same). But during the state's direct examination of the complaining witness, the state elicited testimony that she was a virgin and sexually inexperienced. *Wenthe*, 845 N.W.2d at 234-35. The district court denied Wenthe's request to refute the state's evidence with contradictory testimony regarding the complaining witness's sexual history. *Id.* at 235. Specifically, Wenthe was not allowed to testify that the complaining witness told him that she had enjoyed oral sex with past boyfriends, that she had previously experienced anal sex, and that she would enjoy engaging in those activities with him. *Wenthe*, 865 N.W.2d at 305-06.

Relying on Minnesota's rape-shield law, the supreme court stated that the state "should not have introduced evidence indicating that [the victim] was sexually

12

inexperienced" and that the district court abused its discretion by allowing the state to do so. *Id.* at 306. However, the supreme court disagreed that a new trial was warranted based on the theory that the state opened the door to Wenthe's rebuttal evidence regarding the victim's past sexual conduct. *Id.* at 307-08. In doing so, the supreme court reasoned that "[t]he limited relevance and probative value" of evidence about the victim's prior sexual conduct "does not substantially outweigh its prejudicial and harmful effect." *Id.* at 307; *see* Minn. R. Evid. 403. The supreme court further reasoned that, even if the district court had abused its discretion by prohibiting Wenthe's sexual-history evidence, "any error was harmless beyond a reasonable doubt," noting that "[c]onstitutional error does not result in a reversal of a conviction if the verdict actually rendered was surely unattributable to the error." *Wenthe*, 865 N.W.2d at 308 (quotation omitted).

*Wenthe* is similar to this case in several ways. In both cases, the state asked the district court to prohibit the defense from offering evidence that was inadmissible under normal circumstances. However, the state then presented the very type of evidence it sought to prohibit. In *Wenthe*, the state presented evidence regarding the victim's sexual history, even though such evidence is generally inadmissible under the rape-shield law. Here, the state presented evidence about the Wisconsin offense, even though that evidence was generally irrelevant.

In both *Wenthe* and this case, the state's presentation of direct testimony opened the door to a response from the defense. Here, the door was opened by the prosecutor's presentation of EN's testimony regarding the alleged Wisconsin offense, which described where it happened, how it happened, who did it, and why EN was sure that TP did it. The

13

state argues that it elicited EN's testimony about TP's alleged sexual assault to "prophylactically impeach" EN, that is, to alert the jury that during the investigation of the charged offense, EN had falsely accused Path of the Wisconsin offense. That may have been the prosecutor's intent, but it does not change the outcome; instead of merely establishing that EN had made an inconsistent statement, in which she falsely informed MCRC that Path committed the Wisconsin offense, the prosecutor elicited a detailed description of the Wisconsin offense.

Because the Wisconsin offense was not charged and Path was not the alleged perpetrator of that offense, evidence regarding the Wisconsin offense was generally irrelevant and inadmissible. In addition to being irrelevant and inadmissible, EN's testimony regarding the Wisconsin offense created a danger of unfair prejudice, confusion of the issues, and misleading the jury—the very reasons the district court ruled that TP could not testify regarding the Wisconsin offense. *See* Minn. R. Evid. 403. If the state did not want the defense to present TP's testimony regarding the Wisconsin offense, the prosecutor should not have questioned EN about that offense. *See Waddell*, 308 N.W.2d at 304 (stating that if an attorney wants to prevent a jury from hearing certain evidence, the attorney should not present its own evidence on that point). As the supreme court suggested in *Wenthe*, the rules of evidence apply equally to the state and to the defense in a criminal prosecution. 865 N.W.2d at 306-07; *see* Minn. R. Evid. 412 (incorporating the rape-shield law).

Although the *Wenthe* court ultimately concluded that the district court did not abuse its discretion by declining to admit Wenthe's proffered evidence to contradict the state's

14

improper evidence, reasoning that "[t]he limited relevance and probative value of [the proffered] evidence does not substantially outweigh its prejudicial and harmful effect," we reach a different conclusion here. 865 N.W.2d at 307; *see* Minn. R. Evid. 403.

The state's case rested heavily on EN's testimony. Testimony from TP contradicting EN's detailed description of the Wisconsin offense was relevant and probative regarding the issue of EN's credibility. Limited testimony from TP contradicting EN's accusation would not have been unfairly prejudicial, and it would have been no more confusing or misleading to the jury than EN's door-opening testimony describing the Wisconsin offense in the first place. In fact, on this record, it is entirely possible that TP's failure to respond to EN's accusation—despite her testimony regarding the Wisconsin offense—was confusing and misleading. Thus, the relevance and probative value of TP's proffered testimony substantially outweighed the dangers of unfair prejudice, confusion of the issues, or misleading the jury. The district court therefore abused its discretion by determining that TP's proffered testimony was inadmissible. *See* Minn. R. Evid. 401, 403.

The state complains that if the district court had allowed TP to testify that she did not sexually assault EN in Wisconsin, "there would be little . . . to prevent [Path] from bringing in additional evidence of TP's innocence." But the district court could have limited the scope of TP's testimony regarding the Wisconsin offense. *See Gore*, 451 N.W.2d at 319 (holding that the district court did not abuse its discretion in admitting extrinsic testimony to impeach defendant's testimony when the extrinsic testimony "was appropriately limited in scope and . . . met the requirements of Rule 403"). The state further argues that the district court's concerns about the potential for a "'trial within a

trial' [were] grounded in the law." But the need to sometimes allow otherwise inadmissible evidence in response to door-opening testimony is also grounded in law. *See Wenthe*, 865 N.W.2d at 306 (discussing the door-opening doctrine).

We conclude that under the unique circumstances of this case, in which the state presented irrelevant testimony from EN describing TP's alleged commission of the Wisconsin offense and thereby opened the door to a response from the defense, the district court abused its discretion by not admitting TP's testimony to contradict EN's testimony. We further conclude that the error violated Path's constitutional right to present a complete defense. To be clear, the prosecutor's act of opening the door did not require the district court to open a floodgate and allow a "trial within a trial." But logic, the facts in the record, and fairness warranted a limited response from defense witness TP regarding the Wisconsin offense.

## II.

Having concluded that the district court abused its discretion by prohibiting TP's testimony denying the Wisconsin offense, we must determine whether that error was harmless beyond a reasonable doubt. "A violation of a criminal defendant's constitutional rights necessitates a new trial unless the violation was harmless beyond a reasonable doubt." *Wenthe*, 865 N.W.2d at 306 (treating the alleged evidentiary error resulting from exclusion of defense evidence as constitutional). "Constitutional error does not result in a reversal of a conviction if the verdict actually rendered was surely unattributable to the error." *Id.* at 308 (quotation omitted).

16

We consider the following factors when assessing whether the erroneous admission of evidence is harmless: "the manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, and whether it was effectively countered by the defendant." *State v. Caulfield*, 722 N.W.2d 304, 314 (Minn. 2006) (quotation omitted). If an evidentiary ruling "results in the erroneous exclusion of defense evidence in violation of the defendant's constitutional rights, the verdict must be reversed if there is a reasonable possibility that the verdict might have been different if the evidence had been admitted." *State v. Graham*, 764 N.W.2d 340, 351 (Minn. 2009) (quotation omitted). "The correct inquiry is . . . whether, assuming that the damaging potential of the excluded evidence were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *State v. Post*, 512 N.W.2d 99, 102 (Minn. 1994) (quotation omitted).

The state contends that any error here was harmless, arguing:

> EN's credibility was fully exposed by the admission of extrinsic evidence (the MCRC video) of EN's inconsistent statement, from which the defense could ask the jury to reject all of her testimony. Admitting TP's testimony denying EN's allegation that TP sexually assaulted her at Wisconsin Dells *would have added little impeachment value* beyond the already extraordinary impeachment value of evidence establishing that EN at different times accused two different people of the same alleged assault.

(Emphasis added.) That argument fails to recognize that although the district court correctly reasoned that the Wisconsin offense was relevant only for impeachment purposes, the state went beyond that purpose and presented substantive evidence regarding the offense. The defense's response should not have been limited to impeachment.

17

As to the impeachment that did occur, the defense cross-examined EN regarding her prior inconsistent statement to MCRC, in which she falsely accused Path of committing the Wisconsin offense. In addition, Path testified that he did not sexually assault EN in either Minnesota or Wisconsin and that he did not "observe [TP] doing anything to [EN] in that tent that night." Thus, the defense offered some evidence that EN's sexual assault allegations against both Path and TP were false. But the defense did not significantly undercut the state's suggestion that EN's accusation of TP was credible. *See Wenthe*, 865 N.W.2d 308 (explaining that the complaining witness's own testimony that she tended to "dissociate" during previous sexual experiences with other partners significantly undercut her testimony and the state's suggestion that she was sexually inexperienced).

Moreover, the evidence of Path's guilt was not overwhelming. *See State v. Juarez*, 572 N.W.2d 286, 291 (Minn. 1997) ("The overwhelming evidence of guilt is a factor, often a very important one, in determining whether, beyond a reasonable doubt, the error has no impact on the verdict."). Both of Path's accusers—EN and SS—made inconsistent statements to the professionals who investigated their accusations. EN told MCRC that Path committed the Wisconsin offense, and SS told the police that Path did not sexually assault her. And as is often the case when a child alleges criminal sexual conduct that occurred in the past, memories were imperfect, there were no witnesses to the charged offense, and there was no physical evidence of the offense.

Of course, a criminal conviction may be based on the testimony of a single witness. *See State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (stating that "a conviction can rest on the uncorroborated testimony of a single credible witness" (quotation omitted)).

18

And in this case, the jury's verdict indicated that it believed EN, and not Path, despite the lack of corroboration. However, the jury's finding of guilt rested heavily on this credibility determination. Although the defense's impeachment efforts and arguments regarding EN's credibility were consistent and strong, they were no match for the absence of *any* testimony from TP contradicting EN's testimony regarding the alleged Wisconsin offense.

Again, EN testified that Path sexually assaulted her in Minnesota and that TP sexually assaulted her in Wisconsin. Although Path denied EN's accusations on the stand, TP was not allowed to do so. But the jury did not know that the district court had prohibited TP from testifying regarding EN's accusation against her. And although the jury was told that it did not have to decide whether the Wisconsin offense occurred, it was reasonable for the jury to assume that, because TP did not deny EN's accusation, the accusation was in fact true. The juxtaposition of Path's denial of EN's accusations and TP's silence on the issue reasonably suggested that EN's accusation against TP was true. Thus, the jury was presented with "a misleading or distorted representation of reality." *Valtierra*, 718 N.W.2d at 436 (quotation omitted).

Moreover, the district court's exclusion of TP's testimony regarding the Wisconsin offense gave the state an "unfair advantage." *Wenthe*, 865 N.W.2d at 306. Specifically, the ruling unfairly allowed the state to bolster EN's credibility while at the same time precluding the most effective response from the defense: TP's denial under oath. Again, in closing argument, the prosecutor described EN's testimony regarding TP's alleged sexual assault of EN in the Wisconsin Dells and argued that the jury should believe that TP sexually assaulted EN. The prosecutor argued that EN has "consistently maintained that"

19

TP sexually assaulted her in Wisconsin. The prosecutor argued: "Why would [EN] make up this allegation about [TP] if it wasn't true?" The following portion of the prosecutor's closing argument regarding the credibility of EN's accusation against TP was highly persuasive:

> [TP] was someone that [EN] looked up to. They were close. You heard the same from [TP]. They watched countless videos together on makeup tutorials. [TP] taught [EN] how to do her makeup. These were close cousins. There wasn't a huge difference in age between them. Why would [EN] make up this allegation about [TP] if it wasn't true?

On this record, we cannot say that "the verdict actually rendered was surely unattributable to the error." *Id.* at 308 (quotation omitted). Instead, there is a "reasonable possibility that the verdict might have been different" if TP had been allowed to deny EN's accusation during her testimony. *Graham*, 764 N.W.2d at 351. The absence of TP's denial was glaring, and it is reasonable to suspect that the jury considered that absence when determining that EN was credible, and not Path. Moreover, the erroneous exclusion of any testimony from TP regarding the Wisconsin offense was exacerbated by the prosecutor's closing argument inviting the jury to credit EN's allegation against TP, which in turn bolstered the credibility of EN's allegation against Path.

To be clear, our decision is based on the unique circumstances of this case and the unfairness that resulted from EN's largely unrebutted, irrelevant testimony that TP sexually abused her in Wisconsin. The district court's ruling resulted in two different standards at trial. On one hand, the state was allowed to present EN's testimony accusing TP of an uncharged, collateral sexual assault. On the other hand, the defense was not allowed to

present TP's testimony contradicting EN's testimony, on the grounds that it would have been collateral. Allowing the defense to present an appropriately limited response from TP would have evened the playing field and eliminated the unfairness resulting from the district court's ruling.

In conclusion, the district court abused its discretion by not allowing TP to deny EN's sexual-assault accusation after the state elicited testimony from EN describing that alleged assault in detail, resulting in a violation of Path's constitutional right to present a defense. Because that error was not harmless beyond a reasonable doubt, we reverse and remand for a new trial. In doing so, we are mindful of the consequences of our decision and the burden that comes from having to retry the case, including any potential harm to EN as a result of having to testify again. Nevertheless, we are required to follow the law.

**Reversed and remanded.**